STATE OF CONNECTICUT *v.* MICHAEL D. TOMLIN
(SC 16524)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued February 10—officially released November 25, 2003

*Mark A. Rademacher*, assistant public defender, for the appellant (defendant).

*Bruce R. Lockwood*, assistant state's attorney, with whom, on the brief, was *David I. Cohen*, state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Michael D. Tomlin, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-55a (a)[1] and 53a-55 (a) (3).[2] On appeal, the defendant claims first that he was denied his constitutional right to notice of the charge against him when he was convicted of the crime of manslaughter in the first degree with a firearm, a crime that the defendant was not charged with in the information and that, according to the defendant, is not a lesser included offense of murder. Second, the defendant claims that the trial court improperly declined to instruct the jury on manslaughter in the second degree and criminally negligent homicide as lesser included offenses of murder. We agree with the

---

[1] General Statutes § 53a-55a (a) provides in relevant part: "A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. . . ."

[2] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

defendant's second claim. Accordingly, we reverse the judgment of the trial court.

We begin by noting that the defendant's claim regarding the trial court's failure to instruct the jury on manslaughter in the second degree and criminally negligent homicide requires us, on appeal, to review the facts in the light most favorable to the defendant.[3] E.g., *State v. Smith*, 262 Conn. 453, 470, 815 A.2d 1216 (2003). On April 3, 2000, the defendant was driving with two friends, Jose Garcia and Manuel Ruiz, in the vicinity of Veterans Memorial Park (park) in Norwalk. The victim, Arley Zapata, who was accompanied by three friends, Michelle Cyr, Timothy Montigue and Jenna St. James, also was driving around the park at the same time as the defendant.

The defendant was stopped at the park exit with his turn signal activated to turn left when the victim pulled alongside on the right. While alongside the defendant's car, an occupant in the victim's car shouted several hostile remarks to Ruiz, who was seated in the backseat of the defendant's car. The victim then turned right and exited the park. Instead of turning left to exit the park, the defendant turned right and headed in the same direction as the victim. The defendant then proceeded a short distance to his house. While Ruiz and Garcia waited in the car, the defendant went into his house with the intention of calling a friend for help but decided not to call because he feared his mother would overhear.

After the defendant had returned to his vehicle, he proceeded to a local beach on the basis of his suspicion that the victim might have driven there. As the defendant entered the beach area, he noticed that the victim was leaving. The defendant turned around and followed

---

[3] We note that only the defendant's second claim requires us to review the facts in the light most favorable to the defendant.

the victim. Thereafter, the victim stopped at a traffic light and the defendant pulled alongside the victim's car. From inside the victim's car, Montigue began shouting at the defendant. In response, the defendant lowered his window and asked Montigue "[what was] the problem." Montigue replied by threatening that he was going to hurt the defendant and one of the defendant's passengers. The defendant told Montigue to "drop it," and Montigue replied, "[w]e ain't droppin' [anything]." As the traffic light turned green, the victim cut in front of the defendant's car and stopped. Montigue and the victim then exited the victim's car and approached the defendant's car. The defendant and Garcia exited the defendant's car in an effort to defuse the situation. Montigue continued to shout at Garcia in the street. Traffic was stopped and other drivers began to blow their horns. The victim and the defendant eventually agreed to go someplace else. The defendant and Garcia and the victim and Montigue returned to their respective vehicles and proceeded to a parking lot across the street.

The defendant parked his car in close proximity to the victim's car. All of the occupants exited both vehicles and continued to exchange words. The victim immediately approached the defendant, took his shirt off and threw it to the ground. The defendant tried to resolve the situation by explaining that he did not know the victim and wanted to know what the problem was. The defendant did not pull into the parking lot with the intention of fighting with the victim but, rather, thought that he could resolve the situation by explaining to the victim that the victim must have mistakenly thought that the defendant was someone else.

The victim threw a punch at the defendant and the defendant swung back in defense. The defendant jumped back and told the victim, "wait a minute . . . chill," in an effort to pacify the victim. At this point

in time, Garcia attempted to assist the defendant by restraining the victim. At the same time, Montigue was provoking a fight with Garcia. After exchanging words with Ruiz, the victim reached over the defendant and hit Ruiz. The defendant attempted to prevent the victim from hitting Ruiz again while Montigue and Garcia began to fight. Amid the confusion, the defendant heard the victim say, "I got something for you . . . ." On the basis of this statement and the victim's prior statement to the defendant that, "I'll smoke you," the defendant feared that the victim was going to go back to his car to get a gun. The defendant then proceeded to his car where he removed a loaded .38 caliber handgun from under the driver's seat.

The defendant then fired a shot into the air with the intention of "giv[ing] a shock to everybody and stop[ping] everybody, and maybe they would run, maybe they would just stop." Everyone stopped for a brief moment, but, immediately thereafter, Montigue hit Garcia and the victim hit Ruiz again. The victim then approached the defendant, and the defendant told him to stop. The victim nevertheless continued to approach the defendant and stated, "you think [you're] bad because you got that gun." The defendant then fired three times in rapid succession at what he believed to be the ground in front of the victim. After the defendant had fired two shots, he noticed a bullet hole in the victim's pants, but did not think he seriously injured the victim. The victim attempted to walk back to his car but collapsed.

The defendant then left the scene with Ruiz, discarded the gun in a storm drain and abandoned his vehicle. The police and paramedics arrived at the scene and found the victim without a pulse. The victim later died as a result of one or more gunshot wounds. Forensic testing revealed that the victim had been shot in the right thigh, chest and back. Forensic testing also

revealed that the bullets extracted from the victim had been fired on a downward trajectory and from the defendant's gun.

On the evening of April 3, 2000, the police arrested Ruiz at his home. Ruiz showed the police officers where the defendant had discarded the gun. The defendant surrendered to the police the following evening. Thereafter, the state charged the defendant with murder in violation of General Statutes § 53a-54a (a),[4] alleging in the information that the defendant, "with intent to cause the death of [the victim] did shoot and cause the death of [the victim] . . . ." In January, 2001, a jury found the defendant guilty of the lesser included offense of manslaughter in the first degree with a firearm. On March 20, 2001, the trial court rendered judgment in accordance with the jury verdict and sentenced the defendant to thirty years imprisonment. The defendant appealed from the judgment of conviction to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-4.

On appeal, the defendant claims that: (1) he was denied his constitutional right to notice of the charge against him when he was convicted of the crime of manslaughter in the first degree with a firearm, a crime that the defendant was not charged with in the information and that, according to the defendant, is not a lesser included offense of murder; and (2) the trial court improperly declined to instruct the jury on manslaughter in the second degree and criminally negligent homicide as lesser included offenses of murder.

I

We begin by reviewing the defendant's claim that he was denied his sixth amendment right to notice of the

---

[4] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

charge against him[5] when he was convicted of manslaughter in the first degree with a firearm. The defendant advances two theories in support of his claim. First, the defendant contends that the information charged him with murder and, because the allegation that he "did shoot" the victim is not an essential element of murder, it should not have been considered in a lesser included offense analysis. Second, the defendant contends that, even if the allegation in the information that he "did shoot" the victim is considered properly in a lesser included offense analysis, it still was improper to instruct the jury with respect to the crime of manslaughter in the first degree with a firearm because the crime of manslaughter in the first degree with a firearm provides for three alternative ways in which the crime may be completed, two of which do not involve the actual *use* of a firearm.

As a threshold matter, we address our standard of review. Whether one offense is a lesser included offense of another presents a question of law. See *State* v. *Yurch,*

---

[5] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ."

We assume without deciding that an accused's sixth amendment right to notice of the charges against him is made applicable to the states through the due process clause of the fourteenth amendment. See, e.g., *State* v. *Scognamiglio*, 202 Conn. 18, 21, 519 A.2d 607 (1987) (referring to defendant's claim "that he had no notice of the charges against him in violation of his rights under the *sixth and fourteenth amendments* to the United States constitution" [emphasis added]); cf. *Cole* v. *Arkansas*, 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948) (referring to right to notice of specific charges as one guaranteed under fourteenth amendment due process clause without reference to sixth amendment in context of appeal from state prosecution).

The defendant also claims to have suffered a violation of his rights under article first, § 8, of the Connecticut constitution, which also affords an accused the "right . . . to be informed of the nature and cause of the accusation . . . ." Inasmuch as the defendant has not provided us with any independent analysis of his state constitutional claim, we limit our review to the defendant's federal constitutional claim. E.g., *State* v. *Sandoval*, 263 Conn. 524, 532 n.17, 821 A.2d 247 (2003).

37 Conn. App. 72, 77, 654 A.2d 1246, appeal dismissed, 235 Conn. 469, 667 A.2d 797 (1995). Accordingly, our review is de novo. E.g., *State* v. *Holmes*, 257 Conn. 248, 252, 777 A.2d 627 (2001), cert. denied, 535 U.S. 939, 122 S. Ct. 1321, 152 L. Ed. 2d 229 (2002).

Before we address the defendant's first claim, we note that the defendant did not take exception to the trial court's charge on manslaughter in the first degree with a firearm. The defendant's claim, therefore, is unpreserved. The defendant nonetheless seeks review of his claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), under which "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40.

The defendant has satisfied the first two prongs of *Golding* because the record is adequate for review and, if the defendant were convicted of a crime for which he never had been given notice, he would be deprived of due process of law. *Cole* v. *Arkansas*, 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948); see also *Faretta* v. *California*, 422 U.S. 806, 818, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Thus, the defendant's claim is reviewable.

A

In determining whether a constitutional violation exists in the present case, we must review the law regarding lesser included offenses. "The constitutionality of instructing on lesser included offenses is

grounded on the premise that whe[n] one or more offenses are lesser than and included within the crime charged, notice of the crime charged includes notice of all lesser included offenses. . . . This notice permits each party to prepare a case properly, each cognizant of its burden of proof." (Internal quotation marks omitted.) *State* v. *Chance*, 236 Conn. 31, 56, 671 A.2d 323 (1996).

"A defendant is entitled to an instruction on a lesser offense if . . . the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant [not guilty] of the greater offense but guilty of the lesser." *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980). The defendant's claim that he was not afforded notice of the crime of which he was convicted implicates the second prong of *Whistnant*.

The second prong of *Whistnant* derives from our earlier decision in *State* v. *Brown*, 163 Conn. 52, 301 A.2d 547 (1972). In *Brown*, we stated that "[c]ourts have taken three approaches in determining whether a crime is a 'lesser included crime' when the evidence would support a conclusion that the lesser crime was committed: (1) The included crime may be one consisting solely of elements which must always be present for the greater crime to have been committed; (2) it may be one consisting solely of elements which must have been present for the greater offense to have been committed

in the manner described by the information or bill of particulars thereto; [or] (3) . . . it may be a crime which the evidence suggests and which could have been included in the information. The Connecticut rule on this question follows the second course . . . ." (Citation omitted.) Id., 60.

That second course comprises the second prong in *Whistnant*, which encompasses the cognate pleadings approach. "The cognate-pleadings approach . . . does not insist that the elements of the lesser offense be a subset of the higher offense. It is sufficient that the lesser offense have certain elements in common with the higher offense, which thereby makes it a 'cognate' or 'allied' offense even though it also has other elements not essential to the greater crime. [In addition], the relationship between the offenses is determined not by a comparison of statutory elements in the abstract, but by reference to the pleadings in the case. The key ordinarily is whether the allegations in the pleading charging the higher offense . . . include all of the elements of the lesser offense." 5 W. LaFave, J. Israel & N. King, Criminal Procedure (2d Ed. 1999) § 24.8 (e), pp. 579–80.

This interpretation of Connecticut's lesser included offense doctrine is consistent with our prior case law. For example, before *Whistnant* was decided, we implicitly rejected, in two separate cases, the contention that the only allegations of the information or bill of particulars that are relevant to a lesser included offense analysis are those that involve the essential elements of the crime charged. See *State* v. *Ciotti*, 174 Conn. 336, 387 A.2d 546 (1978); *State* v. *Neve*, 174 Conn. 142, 384 A.2d 332 (1977).

In *Neve*, the defendant, Joseph Neve, was charged with criminal attempt to commit robbery in the first degree and was convicted of the lesser included offense of criminal attempt to commit robbery in the second

degree. *State* v. *Neve*, supra, 174 Conn. 142–43. Neve claimed that the court should not have charged the jury on the lesser crime because it included the element of being aided " 'by another person actually present,' " which was not an element of the greater crime. Id., 145, quoting General Statutes (Rev. to 1977) § 53a-135 (a) (1). We rejected this claim. *State* v. *Neve*, supra, 145–46. In so doing, we relied on the test set forth in *Brown*, namely, "whether it is possible to commit the greater offense, *in the manner described in the information . . .* without having first committed the lesser." (Emphasis added; internal quotation marks omitted.) Id., 145. We then looked to the allegations of the information, which had "made explicit reference to . . . Neve . . . [*and two other people*] *who were actually present* and acting with the kind of mental state required for the commission of the offense." (Emphasis added; internal quotation marks omitted.) Id. We concluded that "[i]t would . . . have been impossible for [Neve] to have committed the greater offense of attempted robbery in the first degree in the manner described in the information without [having been] aided by another person actually present." (Internal quotation marks omitted.) Id. We held, therefore, that the trial court properly instructed the jury that the offense of attempt to commit robbery in the second degree with another person actually present was a lesser included offense of attempt to commit robbery in the first degree. Id., 145–46. It is important to note that the allegation in the information that Neve was aided by other persons present during the commission of the robbery was *not* an essential element of the offense with which Neve was charged, namely, attempt to commit robbery in the first degree. See General Statutes (Rev. to 1977) § 53a-134 (a).

Similarly, in *Ciotti*, the defendant, John Ciotti, was charged with the crime of rape in the first degree. *State*

v. *Ciotti*, supra, 174 Conn. 336. Ciotti specifically was charged under that portion of the first degree rape statute prohibiting sexual intercourse by forcible compulsion. See id., 338; see also General Statutes (Rev. to 1972) § 53a-72 (a) (1). The state requested that the court instruct the jury on the lesser offense of rape in the second degree. *State* v. *Ciotti*, supra, 337. In particular, the state sought an instruction with respect to that portion of the second degree rape statute prohibiting a male at least eighteen years old from engaging in sexual intercourse with a female under the age of sixteen. See id., 338. The trial court declined to give the requested instruction, and the defendant was acquitted of first degree rape. Id., 336–37. The state appealed, claiming that the trial court should have given the requested instruction. Id., 337. We rejected the state's claim because the state filed only a short form information charging Ciotti with first degree rape, without setting forth any of the details surrounding the alleged crime or the ages of the perpetrator and the victim. Thus, on the basis of the allegations and the charge set forth in the information, it was possible for Ciotti to have committed the greater offense, namely, forcible sexual intercourse, without having first committed the lesser offense, namely, being eighteen or older and engaging in sexual intercourse with a female who is less than sixteen. Id., 338. We thus implicitly recognized that, had the information included details regarding the ages of the parties, the state would have been entitled to its requested instruction on the lesser offense of rape in the second degree. See id.

On the basis of the foregoing, we conclude that the trial court in the present case properly considered the allegation that the defendant "did shoot" the victim in determining whether to instruct the jury on the lesser included offense of manslaughter in the first degree with a firearm. Consequently, the defendant cannot pre-

vail on his claim because he has not demonstrated the existence of a constitutional violation and, therefore, has not satisfied the third prong of *Golding*.[6]

### B

The defendant next claims that, even if the allegation in the information that the defendant "did shoot" the victim properly was considered in a lesser included offense analysis, it still was improper for the court to have instructed the jury on manslaughter in the first degree with a firearm because that offense provides for three alternative ways in which the offense may be completed, two of which do not involve the actual *use* of a firearm. Thus, the allegation that the defendant "did shoot" the victim, if properly considered, put the defendant on notice of only one of the three alternative ways of completing the crime.

The defendant claims that *State* v. *Anderson*, 178 Conn. 287, 422 A.2d 323 (1979), and *State* v. *Dolphin*, 203 Conn. 506, 525 A.2d 509 (1987), support his contention. *Anderson* and *Dolphin* are distinguishable, however. In *Anderson*, we held, on the basis of the information in that case, that robbery in the second degree was not a lesser included offense of robbery in the first degree.

---

[6] We note that the defendant's first claim is based on his contention that he was not afforded notice of the crime of which he was convicted, namely, manslaughter in the first degree with a firearm, in violation of the sixth and fourteenth amendments to the United States constitution. The crux of the defendant's first claim is that the element regarding the use of a firearm in the commission of the crime, which is required for a conviction of manslaughter in the first degree with a firearm, is not a required element of murder. It is worth noting, however, that at the trial court's charging conference, defense counsel stated that he "would certainly be amenable to manslaughter in the second degree with a firearm." It is difficult to reconcile the defendant's position on appeal that he was not afforded notice of the crime of manslaughter in the first degree with a firearm when defense counsel was amenable to a charge on the lesser offense of manslaughter in the second degree with a firearm, which includes a "use of a firearm" element identical to that contained in the statute defining the crime of manslaughter in the first degree with a firearm.

*State* v. *Anderson,* supra, 294, 295. The defendant, Milton E. Anderson, was charged with robbery in the first degree in violation of General Statutes (Rev. to 1975) § 53a-134 (a) (2), which required only that an accused be armed with a deadly weapon or dangerous instrument during the commission of the robbery or immediate flight therefrom. See *State* v. *Anderson,* supra, 293. General Statutes (Rev. to 1975) § 53a-135 (a), which defined the crime of robbery in the second degree, required that the defendant commit robbery: (1) while being aided by another person actually present; or (2) while he or another participant threatens the use of what appears to be or what he represents to be a deadly weapon or a dangerous instrument. See *State* v. *Anderson,* supra, 293.

Thus, "to commit robbery in the first degree while being armed, it [was] not necessary that the accused . . . (1) [be] aided by another person actually present; or (2) [that the accused] or another participant in the crime threaten[ed] the use of . . . a deadly weapon or a dangerous instrument." (Internal quotation marks omitted.) Id., 294. We concluded, therefore, that, inasmuch as there were no allegations in the information that provided additional details regarding the commission of the crime charged, such as whether Anderson was aided by another person or whether he threatened the use of a deadly weapon or dangerous instrument, it was possible for Anderson to have committed the greater offense, in the manner described in the information, without first having committed the lesser offense. See id.

Similarly, in *Dolphin,* we stated that "[t]he indictment charging the defendant [Herbert Dolphin] with the crime of robbery in the first degree stated that the defendant 'did commit a robbery of [the victim], and, in the course of the commission of the crime or of the immediate flight therefrom, he was armed with a deadly

weapon, to wit: a sawed-off shotgun . . . .' There was no bill of particulars to elaborate on or make more specific the crime charged.

"Robbery in the second degree requires that 'in the course of the commission of the crime [of robbery] or of immediate flight therefrom, [the accused] or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument.' . . . Robbery in the first degree . . . however, requires that a person or another participant, in committing a robbery or in immediate flight therefrom, be armed with a deadly weapon. The [accused] need not display the weapon [or] threaten to use it to commit a robbery in the first degree. One merely has to be so armed. 'An example which comes to mind would be the situation [in which] the accused has a loaded gun in his pocket and commits a robbery without ever using or referring to the weapon. He would be armed but never have displayed or threatened the use of a weapon as required in the crime of robbery in the second degree.' . . . Thus, it is possible to commit a robbery in the first degree, as set forth in this particular indictment, without having committed the lesser offense of robbery in the second degree. . . . Accordingly, under the particular indictment in this case, the crime of robbery in the second degree is not a lesser included offense [of robbery in the first degree] . . . ." (Citations omitted.) *State* v. *Dolphin*, supra, 203 Conn. 517–18.

Although the defendant's reliance on *Anderson* and *Dolphin* is misplaced, his claim presents a unique issue regarding the significance of the term "offense," as it is used in the context of our lesser included offense jurisprudence, that this court previously has not considered. As we already have noted, in order to satisfy the second prong of *Whistnant*, it must not be possible to commit the greater offense, in the manner described

in the information or bill of particulars, without first having committed the lesser offense. *State* v. *Whistnant*, supra, 179 Conn. 588. The defendant's argument assumes that all three of the methods by which manslaughter in the first degree with a firearm may be completed comprise the offense, as that term is used in *Whistnant*. Thus, the defendant maintains, because two of the three possible methods by which manslaughter in the first degree with a firearm may be completed contain elements that do not comprise part of the greater offense of murder by shooting, the trial court may not instruct the jury with respect to any part of manslaughter in the first degree with a firearm.

We believe that the term "offense," as it is used in *Whistnant*, refers to each distinct method, which may be comprised of different elements, by which a crime may be completed. The term "offense" does not refer to the title of the crime encompassing each of those distinct methods. For example, the lesser included offense at issue in the present case, namely, manslaughter in the first degree with a firearm, may be completed in three different ways by satisfying distinct elements. Thus, there are three distinct offenses, within the meaning of the *Whistnant* analysis, encompassed in the crime of manslaughter in the first degree with a firearm. With that in mind, we must review the allegations in the present case as they relate to the crime with which the defendant was charged.

The state charged the defendant with murder in violation of § 53a-54a (a). The state alleged in the information that the defendant, "with intent to cause the death of [the victim] did shoot and cause the death of [the victim] in violation of [§] 53a-54a (a) . . . ." The trial court instructed the jury on the crime of murder. A person is guilty of the crime of murder when: (1) with intent to cause the death of another person; (2) he causes the death of such person. General Statutes § 53a-54a (a).

The trial court further instructed the jury on intentional and reckless manslaughter in the first degree with a firearm. A person is guilty of intentional or reckless manslaughter in the first degree with a firearm when (1a) with intent to cause serious physical injury to another person, he causes the death of such person (intentional manslaughter), or (1b) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person and thereby causes the death of such person (reckless manslaughter), and (2) in the commission thereof he either: (a) uses a firearm; or (b) is armed with and threatens the use of a firearm; or (c) displays or represents by his words or conduct that he possesses a firearm. See General Statutes §§ 53a-55 (a) (1) and (3) and § 53a-55a (a).

With respect to the mens rea element of murder and any lesser included offense of murder, we have stated: "[I]n the context of a murder charge, [f]or purposes of the second condition of *Whistnant* . . . an offense that would be a lesser included offense but for its requirement of a less culpable state of mind than that required for the greater, will be deemed a lesser included offense." (Internal quotation marks omitted.) *State* v. *Barletta*, 238 Conn. 313, 335, 680 A.2d 1284 (1996). Thus, the mental state required for murder encompasses the mental state required for both intentional and reckless manslaughter in the first degree with a firearm.

The three offenses encompassed within the crime of manslaughter in the first degree with a firearm differ with respect to the following element: in the commission of the offense, a defendant either must (1) use a firearm; (2) be armed with and threaten the use of a firearm; or (3) display or represent by his words or conduct that he possesses a firearm. See General Statutes § 53a-55a (a). In the present case, the information alleged that the defendant "did shoot" and cause the

death of the victim. General Statutes § 53a-3 (19) defines the term "firearm" as "any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver *or other weapon,* whether loaded or unloaded from which a shot may be discharged . . . ." (Emphasis added.) Thus, the state's allegation that the defendant "did shoot" the victim fully encompasses the use of a firearm in the commission of the offense because any weapon from which a shot may be discharged meets the statutory definition of the term "firearm." The allegation that the defendant "did shoot" the victim does not, however, encompass the other two methods by which manslaughter in the first degree with a firearm may be completed. Thus, it was possible for the defendant to have committed the crime of murder in the manner described in the information without first having committed the lesser included offense of manslaughter in the first degree with a firearm by: (1) being armed with and threatening the use of a firearm; or (2) displaying or representing by his words or conduct that he possessed a firearm. The second prong of *Whistnant* is satisfied, therefore, only to the extent that it was not possible to commit the greater offense of murder, in the manner described in the information, without first having committed the lesser offense of manslaughter in the first degree with a firearm by the actual use of a firearm.

We disagree with the defendant to the extent that he claims that the trial court properly could not instruct the jury with respect to any portion of the crime of manslaughter in the first degree with a firearm. We agree, however, that the only portion of the statute defining the crime of manslaughter in the first degree with a firearm on which the trial court properly could have instructed the jury was that portion prohibiting the commission of first degree manslaughter while using a firearm because the allegations in the information did not afford the defendant constitutionally adequate

notice of the other two methods by which the crime may be completed.

Nonetheless, we conclude that any error associated with the trial court's instruction with respect to these other two methods was harmless because there was unequivocal evidence presented at trial that the defendant used a firearm and did shoot the victim. Under the facts of this case, therefore, no reasonable jury could have found the defendant guilty of manslaughter in the first degree with a firearm *merely* on the basis of the defendant's threatened use of a firearm, or his display or representation by his words or conduct that he possessed a firearm.

Accordingly, the defendant is unable to satisfy the fourth prong of *Golding* and, thus, cannot prevail on his claim that the trial court improperly instructed the jury on the crime of manslaughter in the first degree with a firearm because that crime provides for three alternative ways in which the crime may be completed, two of which do not involve the actual *use* of a firearm.[7]

## II

We now consider the defendant's claim that the trial court improperly declined to instruct the jury on manslaughter in the second degree; see General Statutes § 53a-56 (a) (1);[8] and criminally negligent homicide; see General Statutes § 53a-58 (a);[9] as lesser included

---

[7] We note that the defendant also seeks review under the plain error doctrine. See Practice Book § 60-5. On the basis of our conclusion that manslaughter in the first degree with a firearm is a lesser included offense of murder in the context of the present case, however, we decline to review the defendant's claim under the plain error doctrine.

[8] General Statutes § 53a-56 (a) provides in relevant part: "A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

[9] General Statutes § 53a-58 (a) provides in relevant part: "A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person . . . ."

offenses of murder. Specifically, the defendant claims that there was sufficient evidence to sustain a conviction of manslaughter in the second degree or criminally negligent homicide inasmuch as the evidence regarding the defendant's mental state was sufficiently in dispute, thereby permitting a jury consistently to find the defendant not guilty of murder but guilty of manslaughter in the second degree or criminally negligent homicide.

The state claims that the trial court properly determined that the evidence regarding the defendant's mental state was not sufficiently in dispute to permit a jury consistently to find the defendant not guilty of murder but guilty of manslaughter in the second degree or criminally negligent homicide. Alternatively, the state claims that, inasmuch as the defendant actually was found guilty of manslaughter in the first degree with a firearm, any error in the trial court's failure to instruct the jury on lesser included offenses was harmless. We agree with the defendant that manslaughter in the second degree and criminally negligent homicide are lesser included offenses of murder under the circumstances of this case. Furthermore, we disagree with the state's contention that the trial court's failure to charge the jury on those lesser included offenses was harmless.

A

Prior to addressing the defendant's claim that the trial court improperly declined to instruct the jury on manslaughter in the second degree and criminally negligent homicide, we set forth the applicable standard of review. "[W]e view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. . . . On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if we cannot as a matter of law exclude [the] possibility that the defendant is guilty only of the lesser offense." (Internal quotation marks

omitted.) *State* v. *Smith*, 262 Conn. 453, 461, 815 A.2d 1216 (2003).

As we previously have noted, there are "well established principles governing whether a defendant is entitled to a lesser included offense instruction under the *Whistnant* test: This court repeatedly has recognized that [t]here is no fundamental constitutional right to a jury instruction on every lesser included offense . . . . *State* v. *Whistnant,* [supra, 179 Conn. 583]. Rather, the right to such an instruction is purely a matter of our common law. A defendant is entitled to an instruction on a lesser [included] offense if . . . the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant [not guilty] of the greater offense but guilty of the lesser." (Internal quotation marks omitted.) *State* v. *Smith,* supra, 262 Conn. 460.

In the present case, the defendant requested that the court instruct the jury on the crimes of manslaughter in the first degree, manslaughter in the second degree and criminally negligent homicide as lesser included offenses of murder. "It is well settled that . . . [a] proposed instruction on a lesser included offense constitutes an appropriate instruction for purposes of the first prong of *Whistnant* if it complies with Practice Book

[§ 42-18].[10] . . . We previously have held, in the context of a written request to charge on a lesser included offense, [that the] requirement of [§ 42-18] is met only if the proposed request contains such a complete statement of the essential facts as would have justified the court in charging in the form requested." (Internal quotation marks omitted.) Id., 465. The defendant complied with Practice Book § 42-18 in the present case. Thus, the first prong of *Whistnant* is satisfied.

The second prong of *Whistnant* also is satisfied because the only element that distinguishes murder, on the one hand, which is the crime with which the defendant was charged, from manslaughter in the second degree and criminally negligent homicide, on the other hand, is the state of mind element. As we previously have noted, however, "in the context of a murder charge, [f]or purposes of the second condition of *Whistnant* . . . an offense that would be a lesser included offense but for its requirement of a less culpable state of mind than that required for the greater, will be deemed a lesser included offense." (Internal quotation marks omitted.) *State* v. *Barletta*, supra, 238 Conn. 335. Thus, it was not possible to commit murder, in the manner described in the information, without first having committed the lesser included offenses of second degree manslaughter and criminally negligent homicide.[11]

---

[10] Practice Book § 42-18 provides: "(a) When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the evidence to which the proposition would apply. Requests to charge should not exceed fifteen in number unless, for good cause shown, the judicial authority permits the filing of an additional number. If the request is granted, the judicial authority shall apply the proposition of law to the facts of the case.

"(b) A principle of law should be stated in but one request and in but one way. Requests attempting to state in different forms the same principle of law as applied to a single issue are improper."

[11] We note that the state concedes that the first and second prongs of *Whistnant* are satisfied under the circumstances of this case.

The crux of the defendant's claim regarding the trial court's failure to instruct the jury on manslaughter in the second degree and criminally negligent homicide involves the third and fourth prongs of *Whistnant*. "Despite being conceptually distinct parts of the *Whistnant* formulation, the third and fourth prongs are subject to the same evidentiary analysis. . . . We will, therefore, analyze them simultaneously. The third prong of *Whistnant* requires that there [be] some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense . . . . The fourth prong requires that the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant [not guilty] of the greater offense but guilty of the lesser." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, supra, 262 Conn. 468–69.

"In *State* v. *Rasmussen*, [225 Conn. 55, 65–73, 621 A.2d 728 (1993)], we . . . reviewed the standard of evidence required to satisfy the [third and fourth prongs] of the *Whistnant* test. We . . . held that there must be sufficient evidence, introduced by either the state or the defendant, or by a combination of their proofs, to justify a finding of guilt of the lesser offense. . . . Although [we] expressly [reject] the proposition that a defendant is entitled to instructions on lesser included offenses based on merely theoretical or possible scenarios . . . we will . . . consider the evidence available at trial in the light most favorable to the defendant's request. . . . [T]he jury's role as fact-finder is so central to our jurisprudence that, in close cases, the trial court should generally opt in favor of giving an instruction on a lesser included offense, if it is requested. . . . Otherwise the defendant would lose the right to have

the jury pass upon every factual issue fairly presented by the evidence. . . .

"Lesser included offense instructions are frequently appropriate in cases [in which] the defendant is charged with murder. This is because [t]he critical element distinguishing murder from its lesser included offenses is intent, often the most significant and, at the same time, the most elusive element of the crime charged. . . . We must determine if the evidence suggests at least a possibility that the defendant acted with a lesser intent than that of the specific intent to kill. . . . If we cannot as a matter of law exclude this possibility . . . then the defendant was entitled to lesser included offense instructions." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, supra, 262 Conn. 469–70.

We note that, once sufficient evidence is introduced to call into question whether a defendant, in fact, had the mental state necessary to sustain a conviction of murder, there are fine and imprecise distinctions between the mental states required for the lesser included offenses of murder. For example, it is difficult to conclude that evidence is sufficiently in dispute to permit a jury consistently to find the defendant not guilty of murder but guilty of manslaughter in the first degree, but not sufficiently in dispute, as a matter of law, to warrant a conviction of other lesser included offenses of murder whose elements differ only with respect to the requisite mental state.

Viewing the evidence in the present case in the light most favorable to the defendant, we conclude that the jury reasonably could have found the following. The victim and the occupants of his car, although unprovoked, shouted hostile remarks to the defendant and the occupants of his car. The defendant did not seek a confrontation with the victim but, rather, wanted to

determine why the victim was acting in the way that he was acting and to resolve the situation peaceably.

When the victim and the defendant entered the parking lot where the shooting incident occurred, the defendant intended to resolve the situation. The defendant tried to pacify the victim by explaining to him that he did not know him and that he must have mistakenly thought he was somebody else. Emotions escalated and several altercations ensued. Fearing the situation was getting out of control, the defendant returned to his vehicle and retrieved a loaded gun solely for the purpose of firing a shot into the air in order to defuse the situation. The defendant did fire a shot into the air once, but it only defused the situation briefly. The victim then approached the defendant in a hostile manner and the defendant reacted by shooting the gun three more times in rapid succession toward what he believed was the ground in front of the defendant. The defendant intended to scare the victim so that he would flee the scene and at no point in time did he intend to shoot the victim.

Although the defendant saw a hole in the victim's pants before he fired his third shot, the shots were fired so quickly that there apparently was little time to interpret the immediate consequences of each individual shot. The defendant did not immediately see any blood and he did not think that he had injured the victim. The defendant actually was relieved after firing the three shots because he believed that he successfully had defused the situation without injuring the victim. Immediately after the last shot was fired, the defendant did not think the victim had been injured because he saw the victim turn around and walk toward his car. Only after the defendant witnessed blood seeping through the victim's clothes and the victim collapse while walking to his vehicle did he realize that he actually had shot the victim.

On the basis of the foregoing, we cannot exclude, as a matter of law, the possibility that the defendant's conduct may have fallen squarely within the elements of manslaughter in the first degree, manslaughter in the second degree or criminally negligent homicide rather than the elements of murder. The evidence regarding the defendant's mental state was sufficiently in dispute to permit the jury consistently to find the defendant not guilty of murder but guilty of manslaughter in the second degree or criminally negligent homicide. We conclude that the four prongs of *Whistnant* have been satisfied, and, therefore, the trial court improperly declined to instruct the jury on manslaughter in the second degree and criminally negligent homicide as lesser included offenses of murder.

### B

The state alternatively claims that because the defendant actually was convicted of the lesser included offense of manslaughter in the first degree with a firearm, any error in the failure to instruct the jury on other lesser included offenses was harmless. We disagree.

This court previously had subscribed to the view that when a defendant was convicted of a greater offense, any error associated with the court's failure to charge on a lesser included offense was harmless. See *State v. Thomas*, 105 Conn. 757, 765, 136 A. 475 (1927). In *State v. Monte*, 131 Conn. 134, 137, 38 A.2d 434 (1944), however, we overruled *Thomas* on the basis of practical considerations that reflect the realities of the deliberation process and the realization that the failure to instruct on lesser included offenses may, indeed, work a very serious harm to the accused.

"In *State v. Thomas*, [supra, 105 Conn. 765], the defendant was informed against for the crime of robbery with violence, and the trial court, while it charged that he might be convicted of a number of lesser offenses,

failed to include among them simple or aggravated assault . . . . [W]e held that the omission was not harmful to the defendant because he was found guilty of the crime charged and that necessarily involved the offense of assault. We cited no authority in support of this conclusion and we have found no other case in which a similar decision was made. On the other hand, we have found no satisfactory statement of the reason which supports the rule so unanimously followed in other jurisdictions. From a legalistic standpoint much could be said against its validity. The jury is, however, a very practical means of securing justice. A verdict must in the end speak a conclusion to which each individual juryman gives his conscientious assent. It may not, however, represent the original views of some members, but may be the result of an open-minded discussion and an honest weighing of the opinion of others, in the consciousness that one should not be too sure of a personal judgment in which others who have heard the same evidence and have an equal desire to arrive at the truth do not concur. . . . In the effort of a jury to reach a verdict with which each member can conscientiously agree, the situation presented where the alternative is between finding a defendant guilty as charged or not guilty may be quite different from one where, under the charge of the court, they have the further choice of finding him guilty of some lesser offense embraced within the information. From the standpoint of the actual process by which juries arrive at verdicts, a failure to submit to [the jury] the lesser offense as a permissible basis for [its] verdict may work a very serious harm to the defendant. Upon careful consideration we have concluded that the ruling in [*Thomas*] cannot be sustained and that in the situation before the court . . . an instruction which did not permit the jury to find the defendant guilty of simple assault cannot be regarded as harmless error." *State* v. *Monte*, supra, 131 Conn. 136–37.

The state claims that our decision in *State* v. *Sawyer*, 227 Conn. 566, 587, 630 A.2d 1064 (1993), which requires a trial court to instruct the jury that it cannot deliberate on lesser included offenses until it unanimously has concluded that the defendant is not guilty of the greater offense, effectively overruled *Monte*. We disagree.

In *Sawyer*, we discussed the numerous policy reasons for requiring a jury unanimously to conclude that a defendant is not guilty of the greater offense before considering any lesser included offenses: "Although the jury may initially be instructed concerning lesser included offenses, and may eventually turn to these lesser included offenses to reach a verdict, it should not be given an instruction that could encourage it to give the charged offense short shrift and to turn to lesser included offenses in order to reach a compromise verdict virtually at the outset of its deliberations. Only after it has confronted and unanimously completed the difficult task of deciding the guilt or innocence of the accused as to the charged offense should the jury consider lesser included offenses. Anything less dilutes the right of the state and the defendant to have the jury give its undivided attention and most serious deliberations to the offense with which the defendant is charged and flies in the face of the unanimity requirement of [*State* v. *Aparo*, 223 Conn. 384, 614 A.2d 401 (1992), cert. denied, 507 U.S. 972, 113 S. Ct. 1414, 1415, 122 L. Ed. 2d 785 (1993)] and [*State* v. *Daniels*, 207 Conn. 374, 542 A.2d 306 (1988)]." *State* v. *Sawyer*, supra, 227 Conn. 583.

"Further[more], Connecticut has long accepted the possibility of juror disagreement and the fact that mistrials are a natural consequence of the unanimity requirement. . . . Requiring unanimity induces a jury to deliberate thoroughly and helps to assure the reliability of the ultimate verdict. . . . The fact that a jury may

occasionally be unable to reach a unanimous verdict by following the acquittal first instruction does not warrant the precipitous abandonment of precedent by tinkering with an instruction for which the necessity of repair has not been convincingly established. . . .

"In order to preserve and promote the integrity of jury deliberations when greater and lesser included offenses are at issue, and to encourage the thorough and careful discussion and consideration owed the state and the defendant, we are unwilling to relax the prevailing unanimity requirement that is mandated by our common law. Although we have recognized that jurors may in fact compromise; *State* v. *Monte*, [supra, 131 Conn. 137]; we have never sought to encourage compromise and certainly have never openly advocated it.

"The reasonable efforts instruction also raises grave questions of public policy because of its implications for the doctrine of the implied acquittal in the context of the constitutional protection against double jeopardy. We have held that [w]here a greater offense has been charged, conviction on a lesser offense is an acquittal on the greater. . . . In [*State* v. *Troynack*, 174 Conn. 89, 99, 384 A.2d 326 (1977)], we stated that the trial court instructed the jury that if [it] did not find [the defendant] guilty of manslaughter in the first degree, [it] must then consider whether he was guilty of manslaughter in the second degree. The verdict of guilty of manslaughter in the second degree was thus an implicit acquittal [of] the greater offense. . . . Under the acquittal first instruction, the jury's verdict of guilty of a lesser included offense operates as an acquittal of the greater offense for the purposes of the double jeopardy clause. . . . Under a reasonable efforts instruction, however, it is unclear whether the jury's verdict of guilty of a lesser included offense would result in the defendant's implied acquittal of the greater offense, because, in the absence of some form of special verdict, it would

not be known whether the jury had unanimously agreed to acquit of the greater offense.

"In *State* v. *Aparo*, [supra, 223 Conn. 384], we expressly denied the defendant's double jeopardy claim that was based on the failure of the jury to achieve unanimity concerning the charge of conspiracy to commit murder. Under [the] reasoning [of *Aparo*], the defendant in [*Sawyer*] could similarly have been faced with the prospect of a retrial on the greater offense of murder had the trial court given the jury the reasonable efforts instruction requested because such an instruction does not logically give rise to an implied acquittal of the greater offense. [T]he [state] should not be precluded from retrying a defendant on the greater offense unless a jury actually finds him [not guilty] of that charge. . . . The acquittal first instruction avoids the double jeopardy problems that inhere in an instruction requiring only that the jury make a reasonable effort to arrive at a unanimous verdict on the charged crime before considering the lesser offenses." (Citations omitted; internal quotation marks omitted.) *State* v. *Sawyer*, supra, 227 Conn. 585–87.

The policy concerns at issue in our decision in *Sawyer* do not conflict with or undermine our decision in *Monte.* Although it is true that we require a jury unanimously to find an accused not guilty of the greater offense before considering any lesser included offenses, and that we do not encourage or advocate compromise in the deliberation process, we emphasize that jury instructions on lesser included offenses serve another vital role.

For example, the decision of whether a defendant is entitled to a charge on a lesser included offense depends on a determination that the defendant has satisfied the four prongs of *Whistnant.* See *State* v. *Whistnant*, supra, 179 Conn. 588. The trial court's decision on such

an entitlement occurs outside the presence of the jury and before the jury ultimately is charged. Thus, inherent in a trial court's decision to charge on lesser included offenses is a finding that the defendant's state of mind may fall within one of many requisite mental states. Therefore, the trial court's charge on lesser included offenses, which occurs prior to the jury's deliberations, merely informs the consciousness of the jurors that the defendant's particular state of mind at the time he committed the crime may fall within one of many requisite mental states and that each requisite mental state serves as an element for a distinct crime.

We cannot conclude that the jury's awareness of this legal determination, in and of itself, corrupts the deliberation process. This is true especially in light of the instruction required under *Sawyer* that the jury unanimously find the defendant not guilty of the greater offense before considering any lesser included offenses. We do believe, however, that the failure of a court to inform the jury of these subtle distinctions could result in very serious harm to defendants because the jury supposedly would deliberate under the false impression that the defendant's state of mind reasonably does not fall within the ambit of the elements of distinct crimes.

Moreover, we explicitly have stated that when the four prongs of *Whistnant* are satisfied, a defendant is *"entitled"* to a charge on a lesser included offense. (Emphasis added.) Id. It would be a hollow entitlement, indeed, if, every time a defendant were convicted of a greater offense in a case in which the jury had not been given an instruction on a lesser included offense to which the defendant was entitled, we declared such error harmless without reviewing the facts and circumstances of the particular case. We conclude, therefore, that the mere fact that a defendant is convicted of the greater offense does not compel the conclusion that

any failure to instruct the jury on a lesser included offense is harmless error.

In the present case, the trial court instructed the jury on murder and two lesser included offenses of murder that differed only with respect to the state of mind element. The defendant ultimately was found guilty of the offense requiring the least culpable state of mind and carrying the potential for the least punishment. As we previously have noted in this opinion, however, there is a fine distinction between the state of mind required for the crime of which the defendant was convicted and the states of mind required for the lesser included offenses on which the defendant sought additional jury instructions. Moreover, the evidence concerning the defendant's state of mind was sufficiently in dispute to permit a jury reasonably to have found the defendant guilty of either one of the lesser included offenses on which the defendant sought additional jury instructions. Thus, we are not convinced that the trial court's failure to instruct the jury, as the defendant had requested, on manslaughter in the second degree and criminally negligent homicide as lesser included offenses of murder constituted harmless error.[12]

We conclude that the trial court properly charged the jury on the crime of manslaughter in the first degree with a firearm as a lesser included offense of murder. We also conclude, however, that the trial court improperly declined to charge the jury, in accordance with the defendant's request, on the crimes of manslaughter in the second degree and criminally negligent homicide as lesser included offenses of murder.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.

---

[12] For an example of a case in which we have found harmless error, see *State* v. *Barletta*, supra, 238 Conn. 336.