******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* JOSE LOPEZ, JR.
### (AC 36788)

Beach, Prescott and Norcott, Js.

*Argued September 24—officially released December 2, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Hauser, J.)

*Brendon P. Levesque*, assigned counsel, with whom
was *Dana M. Hrelic*, for the appellant (defendant).

*Emily D. Trudeau*, deputy assistant state's attorney,
with whom, on the brief, were *John C. Smriga*, state's
attorney, and *Pamela J. Esposito*, senior assistant
state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The defendant, Jose Lopez, Jr., appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a). On appeal, the defendant claims that the trial court erred in declining to instruct the jury on the lesser charge of criminally negligent homicide. We affirm the judgment of conviction.

The jury reasonably could have found the following facts. For several months prior to October, 2010, the defendant and his son, Jose Lopez III, known as Chinito, were staying at the home of Ainsworth Barnes in Bridgeport. Ainsworth Barnes' son, Brandon Barnes (Barnes), also resided in the house. On the morning of October 1, 2010, Barnes and the defendant were at the house when Barnes received a cell phone call from Chinito. Chinito informed Barnes that he had been robbed on Barnum Avenue in Bridgeport. After speaking with Chinito, Barnes woke up the defendant and told him that Chinito had been robbed. Barnes also called his cousin, Jamar Watson, who was already on his way to the house, to inform him of the robbery. Barnes and the defendant then went outside to start looking for Chinito. Watson arrived at the house shortly thereafter.

Barnes called Chinito to determine his exact whereabouts, and then Barnes, Watson, and the defendant went to find him. Watson drove himself and Barnes in a rental car, while the defendant drove his black Mustang. They found Chinito on Pixlee Street in Bridgeport, and he got into the defendant's car. Watson, Barnes, Chinito, and the defendant then began driving around the area looking for the people who had robbed Chinito. Chinito saw Shane Smith walking down the street and called Barnes to identify Smith as one of the people who had robbed him. Watson and the defendant parked their cars on the side of the road, and Watson, Barnes, Chinito, and the defendant got out of the cars to pursue Smith on foot.

Smith ran down the street, with Watson, Barnes, Chinito, and the defendant in pursuit. The group caught up to Smith in front of the Old San Juan bar on Barnum Avenue and assaulted him. At some point during the assault, Smith was thrown onto a car parked nearby. The car's alarm went off and the assault ended. Smith ran off and Watson, Barnes, Chinito, and the defendant started walking back to their cars. While they were walking back, Smith began to taunt Watson. Watson and Barnes began to run back toward Smith to fight him again. The defendant told them to stop and that he "got [Smith] twice." At that point, Barnes saw the defendant holding a knife. Watson, Barnes, Chinito, and the defendant then returned to their cars and drove back to Ainsworth Barnes' house. At the house, the defendant stated for a second time that he had stabbed

Smith twice. Watson testified that the defendant said that he stabbed Smith "where he . . . wouldn't die . . . ." Barnes testified that the defendant said that he "tried to get [Smith] where he wasn't gonna kill him."

Smith died later that day. Harold W. Carver II, the state's chief medical examiner, performed an autopsy on Smith. Carver found that Smith's "heart muscle was too big for average" and that Smith had two stab wounds, one to his chest and one to the upper part of his stomach. The stab to Smith's chest resulted in "a wound to the front wall of his heart and a very small amount of damage to one of the valves immediately behind that." The stab wound to the chest was "a very bad wound" and had caused Smith's death. Carver also testified that the large size of Smith's heart had "[p]robably not" contributed to the seriousness of the injury but that "it may have played some component."

The defendant was arrested and charged with murder in violation of § 53a-54a (a), and conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a (a). He pleaded not guilty and elected a trial by jury. The defendant requested that the jury be charged on criminally negligent homicide. The trial court, *Hauser, J.*, declined to give the charge. The jury found the defendant guilty of murder and not guilty of conspiracy to commit murder. The court sentenced the defendant to forty years imprisonment. This appeal followed.

On appeal, the defendant claims that the trial court improperly refused to give a lesser included offense instruction on criminally negligent homicide. He argues that the evidence regarding his mental state was sufficiently in dispute and could have sustained a conviction of criminally negligent homicide. We disagree.

We now turn to the applicable standard of review. *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980), sets forth the standard for when a defendant is entitled to a jury instruction on a lesser included offense. An instruction is warranted if the following conditions are met: "(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." Id.

The state and the defendant agree that the defendant requested a jury instruction on criminally negligent

homicide and that criminally negligent homicide is a lesser included offense of murder. Therefore, in order to prevail on his claim, the defendant must satisfy the third and fourth prongs of *Whistnant*. "[D]espite being conceptually distinct parts of the *Whistnant* formulation, the third and fourth prongs are subject to the same evidentiary analysis . . . [and, therefore, can be analyzed] simultaneously." (Internal quotation marks omitted.) *State* v. *Jones*, 289 Conn. 742, 762, 961 A.2d 322 (2008). "[T]here must be sufficient evidence, introduced by either the state or the defendant, or by a combination of their proofs, to justify a finding of guilt of the lesser offense. . . . Although [we] expressly [reject] the proposition that a defendant is entitled to instructions on lesser included offenses based on merely theoretical or possible scenarios . . . we . . . consider the evidence available at trial in the light most favorable to the defendant's request. . . . [T]he jury's role as factfinder is so central to our jurisprudence that, in close cases, the trial court should generally opt in favor of giving an instruction on a lesser included offense, if it is requested. . . . Otherwise the defendant would lose the right to have the jury pass upon every factual issue fairly presented by the evidence." Id., 763.

The defendant argues that the testimony of Watson and Barnes, who testified that the defendant stated that he tried to stab Smith where Smith would not die, and that of Carver, who testified to the large size of Smith's heart, placed the defendant's intent in question and justified a jury charge on criminally negligent homicide. The defendant contends that, on the basis of the foregoing testimony, "the jury could have concluded that the defendant did not intend to kill the victim, but instead failed to perceive the risk that the physical altercation and use of the knife, combined with the unknown fact of the victim's abnormally large heart, a fact of which the defendant had no knowledge, would result in his death."

The state, on the other hand, argues that the evidence presented at trial did not warrant a jury instruction on criminally negligent homicide. The state asserts that "no rational jury applying common sense could reasonably accept the defendant's claim of negligent homicide . . . . [T]he only rational conclusion the jury could have reached was that, at a minimum, the defendant behaved recklessly." (Citations omitted.) We agree with the state.

General Statutes § 53a-58 (a) provides in relevant part that "[a] person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person . . . ." General Statutes § 53a-3 (14) defines criminal negligence as the failure "to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. . . ." Therefore, "[t]o be guilty of criminally negligent homi-

cide . . . the defendant must fail to perceive a substantial and unjustifiable risk that death will occur." *State v. Ray*, 228 Conn. 147, 155, 635 A.2d 777 (1993).

The defendant argues that the facts of his case are similar to those in *State* v. *Tomlin*, 266 Conn. 608, 634, 835 A.2d 12 (2003) (holding that trial court improperly declined to instruct jury on lesser included offenses), and distinguishable from those in *State* v. *Rasmussen*, 225 Conn. 55, 73, 621 A.2d 728 (1993) (holding that trial court properly denied defendant's request for lesser included offense instructions). The defendant relies on our Supreme Court's decision in *Tomlin* to support his argument that he was entitled to a jury instruction on criminally negligent homicide. In *Tomlin*, the defendant was convicted of manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-55a (a) and 53a-55 (a) (3). *State* v. *Tomlin*, supra, 610. On appeal, the defendant claimed that the trial court improperly declined to instruct the jury on manslaughter in the second degree and criminally negligent homicide. Id. The Supreme Court concluded that, viewing the evidence in the light most favorable to the defendant, the jury reasonably could have found that the "victim . . . approached the defendant in a hostile manner and the defendant reacted by shooting the gun three more times in rapid succession toward what he believed was the ground in front of the defendant. The defendant intended to scare the victim so that he would flee the scene and at no point in time did he intend to shoot the victim." Id., 633. The Supreme Court held that the evidence regarding the defendant's mental state was sufficiently in dispute and, therefore, the trial court had improperly declined to instruct the jury on manslaughter in the second degree and criminally negligent homicide. Id., 634.

Similarly, in *State* v. *Ray*, supra, 228 Conn. 148–49, the defendant, after being convicted of manslaughter in the second degree in violation of General Statutes § 53a-56 (a), appealed on the ground that the trial court had improperly refused his request to instruct the jury on criminally negligent homicide. The defendant had fatally stabbed the victim in a dark, narrow hallway during a physical altercation with the victim. Id., 150–51. At trial, the defendant "admitted to stabbing [the victim] but claimed that he had been frightened and had acted in self-defense." Id., 151. Our Supreme Court concluded that the jury reasonably could have found that "the fatal wound was caused, not as a result of the defendant recklessly lunging at [the victim] with the knife, but rather as a result of the defendant negligently stabbing [the victim] in the chest while blindly trying to fend him off." Id., 158. Accordingly, the Supreme Court held that "the defendant's state of mind was sufficiently in dispute so as to entitle him to a lesser included offense charge regarding criminally negligent homicide." Id.

On the other hand, in *State* v. *Rasmussen*, supra, 225 Conn. 73, our Supreme Court held that the trial court properly denied the defendant's request for lesser included offense instructions on manslaughter in the first and second degrees. The defendant was convicted of murder following the death of his wife, whom the police found lying face up on the floor with a "wooden dowel protrud[ing] five or six inches from her chest." Id., 57. On appeal, the defendant argued that he was entitled to lesser included offense instructions because the jury could have found from the evidence at trial that "he had strangled his wife without the intent to cause her death and that he stabbed her and staged a burglary to cover up the strangulation." Id., 69. The Supreme Court rejected this argument, concluding that "the cumulative effect of the evidence in the record compelled the jury, if it found the defendant was the perpetrator, to find that he had intended to kill his wife. The facts presented excluded the possibility that the victim had been unconscious at the time of the stabbings and incised wounds. One who uses a deadly weapon upon a vital part of another will be deemed to have intended the probable result of that act, and from such a circumstance a proper inference may be drawn in some cases that there was an intent to kill. . . . A pistol, dirk-knife, or gun is a deadly weapon per se. . . . It requires nothing more than common sense to conclude that slashes to the neck of a conscious victim that severed the victim's jugular vein, trachea, larynx and esophagus and the impalement of the victim by a spear are evidence of an intent to kill rather than mere recklessness or intent to injure seriously." (Citations omitted; internal quotation marks omitted.) Id., 72.

The *Whistnant* standard and the foregoing case law indicate that a jury instruction on criminally negligent homicide is warranted in cases where there is some evidence from which the jury could reasonably conclude that the defendant acted negligently, such as when the defendant is so preoccupied by his own emotions or safety that he fails to perceive the risk of death to the victim. See *State* v. *Whistnant*, supra, 179 Conn. 588; see also *State* v. *Edwards*, 214 Conn. 57, 69, 570 A.2d 193 (1990) (holding that defendant was entitled to jury instruction on criminally negligent homicide because his preoccupation with committing suicide prevented him from perceiving the risk of death to the victim). We are not persuaded that the facts in the present case justify a jury instruction on criminally negligent homicide.

A thorough review of the record reveals that the evidence does not reasonably support a finding that the defendant acted negligently. Unlike in *Tomlin* and *Ray*, there was no evidence in the present case that the defendant was trying to scare off an assailant or acting in self-defense, or that he stabbed Smith accidentally.

There is nothing in the record to suggest that the defendant was frightened during the altercation with Smith, or that he was so preoccupied with his own emotions or safety that he failed to perceive the risk that stabbing Smith twice in the chest might result in Smith's death. Although there was testimony from Barnes that the defendant was angry when he learned that his son had been robbed, the defendant had time to locate his son and drive around the area looking for the perpetrators before he stabbed Smith. There was no evidence that, at the time the defendant stabbed Smith, the defendant was so preoccupied with rage that he failed to perceive the risk of death. We recognize that we are required to view the evidence in the light most favorable to the defendant. *State* v. *Jones*, supra, 289 Conn. 763. This does not mean, however, "that the evidence must be unrealistically parsed in contravention of how it was presented to and reasonably could have been perceived by the jury." *State* v. *Preston*, 248 Conn. 472, 477, 728 A.2d 1087 (1999).

The defendant argues that the testimony of Watson and Barnes, that the defendant stated that he stabbed Smith "where he . . . wouldn't die," provided some evidence from which the jury could find that the defendant did not intend to kill Smith but instead failed to perceive the risk of death. The defendant is correct that the jury could have inferred from his statement to Watson and Barnes that he did not intend to kill Smith. His statement in itself, however, does not show that he failed to perceive the risk that stabbing Smith twice in the chest might result in Smith's death. In fact, it tends to show the opposite. The defendant's statement suggests that he *intentionally* stabbed Smith and tried to position the knife so that it would inflict nonlethal wounds. The defendant's attempt to stab Smith "where he . . . wouldn't die" indicates that the defendant perceived the risk that Smith might die as a result of being stabbed and chose to disregard it. In other words, the defendant acted at least recklessly. See General Statutes § 53a-3 (13) ("[a] person acts 'recklessly' . . . when he is aware of and consciously disregards a substantial and unjustifiable risk").

The defendant also argues that the jury could have found that he failed to perceive the risk on the basis of Carver's testimony that Smith's heart was larger than normal and that the large size of Smith's heart "may have played some component" in his death. Essentially, the defendant argues that he failed to perceive the risk that stabbing Smith twice in the chest might result in Smith's death because he was not aware of the large size of Smith's heart and it was possible that the large size of the heart resulted in a more serious wound than would have occurred if Smith had had a normal sized heart. This argument is without merit. It requires nothing more than common sense to conclude that stabbing someone in the chest, regardless of the size of that

person's heart, carries with it the risk of death. See *State* v. *Rasmussen*, supra, 225 Conn. 72. As explained previously in this opinion, this argument also fails because the record in the present case is devoid of any evidence that the defendant failed to perceive the risk of death when he stabbed Smith.

The record does not reasonably support a finding that the defendant failed to perceive a substantial and unjustifiable risk of death. The cumulative effect of the evidence in the record compelled the jury, if it found that the defendant stabbed the victim, to find that he did so at least recklessly. We conclude that the evidence, introduced by either the state or the defendant, or by a combination of their proofs, was not sufficient to justify a conviction of criminally negligent homicide and, therefore, the court did not err in declining to charge the jury on criminally negligent homicide.

The judgment is affirmed.

In this opinion the other judges concurred.

———————————————