### STATE OF CONNECTICUT *v.* JAIME SANTIAGO
### (AC 22303)

Lavery, C. J., and Bishop and Stoughton, Js.

Argued November 20, 2002—officially released February 4, 2003

---

*Joaquina Borges King,* special public defender, for the appellant (defendant).

*Proloy K. Das,* special deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Maureen M. Keegan,* supervisory assistant state's attorney, for the appellee (state).

### Opinion

STOUGHTON, J. The defendant, Jaime Santiago, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (3)[1] and risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21 (1).[2] On appeal, the defendant claims that the evidence presented at trial was insufficient to prove that he was guilty of either crime. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During the day, while his wife was at work, the defendant stayed at home and cared for his three month old infant son and four year old daughter. On November 30, 1998, the defendant was the sole attendant and care-

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

[2] General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony."

giver for his two children. At about 1 p.m., the infant fell from the defendant's lap to the floor. When the defendant picked him up, the infant was crying loudly, his arms and body were shaking and his eyes were rolling. When the baby stopped crying, he became unresponsive and the defendant thought that the infant was dead. The defendant then poured water on him and shook him, after which the baby began kicking and coughing.

Later that afternoon, the defendant's fifteen year old daughter returned home from school and, when she saw the baby, told the defendant that the baby looked sick and that there was something wrong with his eyes. Although the defendant knew how to reach the infant's physician, he did not seek advice or assistance for the infant until about 6 p.m., when he drove with the infant and his younger daughter to Cheshire to pick up his wife. When his wife saw the baby, she told the defendant to drive immediately to a hospital.

The defendant and his family arrived at Waterbury Hospital at about 7 p.m., where the baby was found to be struggling to breathe, unresponsive, in distress and in need of intensive care. An examination showed evidence of brain swelling, anoxic brain injury and retinal hemorrhaging. Medical staff, police and a social worker questioned the defendant to obtain a medical history so as to determine what had happened to the baby to cause his injuries. The defendant first stated that he had noticed during the afternoon that the baby was breathing abnormally, but that his breathing had returned to normal. When asked, the defendant stated that the baby had not fallen or suffered any injury. Later that evening, the baby was transported by Life Star helicopter to the Connecticut Children's Medical Center (medical center) in Hartford and was admitted to the pediatric intensive care unit.

At the medical center, after the baby arrived at the emergency department, Aaron Zucker, director of the pediatric intensive care unit, directed the infant's care. Zucker placed the infant on a respirator to help him to breathe. There was no external evidence of trauma, but an examination revealed retinal hemorrhages in both eyes and abnormal reaction to various stimuli. Computerized axial tomography (CAT) scans completed at Waterbury Hospital and at the medical center showed severe cerebral edema. Zucker told the defendant that in the absence of something similar to a high speed car accident, he could not explain the cause of the severe brain injuries. Shortly afterward, the defendant told Zucker that when he was on his way to pick up his wife, he had in fact made a sudden stop in the car, but because he had failed to secure the car seat properly, the car seat tipped forward so that the baby hit his head on the back of the driver's seat. Zucker told the defendant, and later told the police, that he had trouble believing that this had caused the baby's severe injuries.

The following day, on December 1, 1998, the defendant gave the police a written statement in which he stated that while on the way to Cheshire, with his two children in the backseat at about 6:15 p.m., another car came in front of his vehicle and he was forced to make a sudden stop. The defendant stated that he had heard the infant crying and that when he turned around, he saw the baby's head bounce back from the headrest. The police then told the defendant that the physician did not think that this explanation was a plausible one. A few minutes later, the defendant gave an addendum to his statement. The defendant stated that while he was watching television at about 1 p.m. with the baby on his lap, he either dropped the baby or the baby slipped off his lap and hit his head on the floor. The baby cried and his eyes rolled up, and the defendant shook the baby lightly to get his attention.

On December 3, 1998, the police arrested the defendant on a warrant. He then added a second addendum to his statement. He stated that after the infant fell, he had washed the baby's head and that he had shaken the infant up, down and sideways very hard.

Zucker stated, on the basis of the CAT scan completed at the medical center, that the infant's cerebral edema was perhaps the worst he had ever observed. The injuries sustained by the baby were consistent with "shaken baby syndrome," and, in fact, that was Zucker's diagnosis of the cause of the injuries. The baby has a large head in relation to his body and has weak neck muscles. The underlying cause of the syndrome is an acceleration-deceleration injury and a rotational injury so that the brain moves forward at an extremely rapid rate and collides with the skull when the head stops moving. The brain moves back and forth very rapidly inside the skull, tearing the veins. The brain injury in this case was so severe that the baby is in a persistent vegetative state. He must be fed through a gastrointestinal tube, cannot maintain his body temperature and must be kept in a private room with controlled temperature, his breathing can be erratic, he cannot sit on his own and cannot walk or see. The brain injury to the infant was so severe that he never will be able to walk or to see and will require constant daily care as long as he lives.

After a trial, the jury convicted the defendant of assault in the first degree in violation of § 53a-59 (a) (3) and risk of injury to a child in violation of § 53-21 (1). The defendant received a total effective sentence of twenty years imprisonment. This appeal followed.

The defendant claims that the evidence was insufficient to establish that he acted with the general intent to impair the health of his son. We are not persuaded.

The standard of review for sufficiency of the evidence claims has been stated frequently and is well established. We apply a two part test. First, the evidence must be construed in the light most favorable to sustaining the verdict. *State* v. *Jimenez*, 73 Conn. App. 664, 666, 808 A.2d 1190, cert. denied, 262 Conn. 929, 814 A.2d 381 (2002). Second, the reviewing court "determine[s] whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) Id.

To establish that the defendant was guilty of assault in the first degree in violation of § 53a-59 (a) (3), the state was required to prove beyond a reasonable doubt that the defendant, under circumstances evincing an extreme indifference to human life, recklessly engaged in conduct that created a risk of death to his child and thereby caused serious physical injury to the child. The defendant claims that the evidence was insufficient to establish that the circumstances evinced an extreme indifference to human life. Furthermore, to establish guilt of risk of injury to a child in violation of § 53-21 (1), the state was required to prove beyond a reasonable doubt that the defendant committed an act that was likely to impair the health of the infant.

The defendant posits that the details of the day's events may be gleaned only from his statements and testimony at trial. The defendant claims that the crucial elements of the crimes were not established because he stated, in essence, that he shook the baby in an effort to revive him and that the baby might have been injured when he stopped his car suddenly or when the infant fell from his lap. The difficulty with the defendant's position is that the jury was at liberty to accept or reject some, all or none of his testimony. See *State* v. *Colon*, 71 Conn. App. 217, 224–25, 800 A.2d 1268, cert. denied, 261 Conn. 934, 806 A.2d 1067 (2002). Credibility of the

witnesses is a matter for the jury to determine. Id. Our task is to determine whether there is a reasonable view of the evidence that supports the jury's verdict. *State* v. *Jimenez*, supra, 73 Conn. App. 666. What evinces an extreme indifference to human life is a question of fact. *State* v. *Best*, 56 Conn. App. 742, 755, 745 A.2d 223, cert. denied, 253 Conn. 902, 753 A.2d 937 (2000).

Having reviewed the evidence, we conclude that the jury reasonably could have found that the baby's injuries occurred when the defendant dropped the infant on his head and then picked him up and shook him very hard up, down and sideways. Shaking a baby with such violence as to cause the injuries sustained by the baby is a gross deviation from the standard of conduct a reasonable person would observe, and the jury might reasonably have concluded that it evinced an extreme indifference to human life. See *State* v. *Jones*, 34 Conn. App. 807, 812–13, 644 A.2d 355, cert. denied, 231 Conn. 909, 648 A.2d 158 (1994).

As to the second count, the defendant is incorrect in his assertion that the state was required to prove that his general intent was to impair the health of his child. All that is necessary is the general intent to perform the act that resulted in the injury. *State* v. *McClary*, 207 Conn. 233, 240, 541 A.2d 96 (1988). Construing the evidence in the light most favorable to sustaining the verdict, we conclude that the evidence provided ample support for the jury's verdict as to both counts.

The judgment is affirmed.

In this opinion the other judges concurred.