STATE OF CONNECTICUT *v.* JAMES PEARSON
(AC 25715)

Bishop, Rogers and West, Js.

Argued June 1—officially released September 12, 2006

*Adele V. Patterson*, assistant public defender, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Mary Elizabeth Baran*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, James Pearson, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (3) and risk of injury to a child in violation of General Statutes § 53-21. On appeal, he claims that (1) there was insufficient evidence to establish assault in the first degree, (2) the trial court improperly instructed the jury and (3) the court improperly admitted prejudicial photographs into evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On January 10, 2002, the defendant was living in an apartment on the first floor of a house in New Haven with his girlfriend and her three children, including the victim in this case, then thirty-three month old W.[1] The defendant cared for W during the day while his mother was at work and his siblings were at school. Prior to January 10, 2002, the defendant had bathed W regularly without incident. At the time of the incident leading to the charges against the defendant, W was capable of climbing in and out of the bathtub on his own.

On the morning of January 10, 2002, sometime between 8 and 9 a.m., the neighbors who lived in the apartment directly above the defendant and W heard

---

[1] In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

loud banging noises like "somebody was punching the walls" coming from the defendant's apartment. They heard the defendant yell, "Shut the fuck up," followed by a baby crying loudly. When the baby began crying, the defendant again yelled, "Shut the fuck up."

Shortly thereafter, paramedics arrived in response to a 911 call placed by the defendant requesting medical attention for W, who had been seriously injured in the bathtub. W was wrapped in burn sheets, placed in an ambulance and rushed to Yale-New Haven Hospital. W was subsequently moved to Boston where he was treated by Robert Sheridan, a physician at the Shriners Burns Institute, which is annexed to Massachusetts General Hospital.

When W first arrived at the Shriners Burns Institute, he had deep second and third degree burns to his legs, buttocks, perineum, hands and forearms. At the time of trial in January, 2004, W was still being treated by Sheridan and had lost eight of his toes, which had to be amputated as a result of his burn injuries. As a further result of his burn injuries, W developed a tightness of the anus with considerable medical side effects. Sheridan opined that the burn injuries sustained by W were potentially life threatening and that he will always have scars from the injuries.

At trial, the defendant testified that he did not know that the water in the bathtub was too hot. He also testified that he did not check the temperature and that W was burned by accident. The defendant testified that he had placed W in the bathtub, gone to watch television and, when he returned to the bathroom,[2] observed things floating in the bathtub, which turned out to be

---

[2] Although at trial, the defendant could not recall how long he was gone from the bathroom, on the date of the incident, he told various individuals that he had been out of the room for somewhere between ten and twenty minutes.

pieces of W's skin. He testified that W had a look on his face that the defendant interpreted as seeking help because the water was hot.[3] The defendant testified that he noticed that W's skin was burned, and that he picked W up out of the bathtub,[4] wrapped him in a towel and called 911.

On the morning of the incident, at about the same time that the paramedics were rushing W out of the house and into the ambulance, Sergeant Direk Rodgers of the New Haven police department entered the apartment, went into the bathroom and noticed that there was water in the bathtub and steam rising from the water. The next day, two other detectives returned to the defendant's apartment and attempted to re-create the crime. They turned the faucet to the right, approximately one quarter of a turn, which is what the defendant told the police he had done before putting W into the bathtub. When they tested the water temperature as the bathtub was filling, the thermometer indicated that the water was 160 degrees Fahrenheit. When the water in the bathtub had risen to a level of four inches, the same level as it had been on the previous day when the police entered the apartment, the detectives turned off the faucet, waited for approximately thirty minutes, and noted that the temperature of the water was then approximately 120 degrees Fahrenheit.

At trial, the defendant claimed that the injuries to W were accidental. Linda Arnold, the attending physician at Yale-New Haven Hospital and an expert on childhood burns, opined, to the contrary, stating that on the basis

---

[3] At trial, the defendant testified that he did not remember hearing W scream, yell or cry while W was in the bathtub. He had told the police and investigators on January 10, 2002, that he definitely did not hear W scream, cry or yell while W was in the bathtub sustaining second and third degree burns.

[4] The defendant testified that W was a very verbal child and that he would have gotten out of the bathtub himself if the water were too hot.

of the pattern of the injuries and severity of the burns, W's injuries must have been inflicted intentionally and not accidentally. Thus, Arnold concluded, W's injuries were inconsistent with the defendant's explanations. Carol Jenny, a professor of pediatrics at Brown University School of Medicine, testified that W's injuries were a "classic, textbook case of abusive immersion burns." She testified that W's injuries were the result of a "hot, quick dip" that was not accidental.

The defendant was charged with two counts of assault in the first degree—assault with intent to cause serious physical injury in violation of § 53a-59 (a) (1) and reckless assault under circumstances evincing extreme indifference to life in violation of § 53a-59 (a) (3). The defendant also was charged with risk of injury to a child in violation of § 53-21 (a) (1). The jury found the defendant guilty of reckless assault and risk of injury to a child and not guilty of intentional assault. The defendant was sentenced to a total effective term of fifteen years incarceration, execution suspended after ten years, followed by five years of probation. This appeal followed.

I

The defendant first challenges the sufficiency of the evidence regarding his assault conviction.

"In reviewing [a] sufficiency [of evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty

of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Williams*, 93 Conn. App. 844, 852–53, 890 A.2d 630 (2006).

General Statutes § 53a-59 (a) provides: "A person is guilty of assault in the first degree when . . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ." The defendant claims that the evidence adduced at trial was insufficient to prove that he was aware of and consciously disregarded a risk of death.

This court has held that "[t]he risk of death element of [§ 53a-59 (a) (3)] focuses on the conduct of the defendant, not on the resulting injury to the victim. The statute does not require that the victim was in fact at a risk of death." (Internal quotation marks omitted.) *State* v. *Jones*, 34 Conn. App. 807, 812, 644 A.2d 355, cert. denied, 231 Conn. 909, 648 A.2d 158 (1994). Therefore, as applied in this context, the issue is whether immersing a child into scalding hot bathwater is reckless conduct that creates a risk of death. See id. "A person acts 'recklessly' with respect to a result . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur . . . . The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . ." General Statutes § 53a-3 (13). "Our statutory definition of 'recklessly' speaks 'to a result or to a circumstance described by a statute defining an offense . . . .' General Statutes § 53a-3 (13). The conduct proscribed by § 53a-59 (a) (3) is that which is engaged in by a person who is 'aware of' yet 'consciously disregards' a 'substantial and unjustifiable risk' that such a result will occur." *State* v. *Giguere*, 184 Conn. 400, 404, 439 A.2d 1040 (1981). "Recklessness involves a subjective realization of that risk and a conscious decision to ignore it. . . . It does not involve intentional conduct because one who acts recklessly does not have a conscious objective to cause a particular result. . . . Because it is difficult to prove this through direct evidence, the state of mind amounting to recklessness may be inferred from conduct." (Citations omitted; internal quotation marks omitted.) *State* v. *Jupin*, 26 Conn. App. 331, 340, 602 A.2d 12, cert. denied, 221 Conn. 914, 603 A.2d 404 (1992).

The evidence taken in the light most favorable to sustaining the verdict shows that the jury reasonably

could have found that the defendant immersed W into scalding bathwater that was so hot that steam was still rising from it while the paramedics were rushing W to the hospital, resulting in life threatening second and third degree burns. The jury could have concluded that such treatment of any child is a gross deviation from a reasonable standard of conduct and that the defendant's actions constituted a conscious disregard for the risk of serious physical injury to W. Accordingly, we hold that the evidence was sufficient to support a finding that the defendant acted recklessly as defined in § 53a-3 (13) and required by § 53a-59 (a) (3).

## II

The defendant next contends that the court improperly instructed the jury on the essential elements of assault in the first degree under § 53a-59 (a) (3).[5] The defendant claims that the jury was confused and misled by the court's instruction regarding extreme indifference to human life. We are not persuaded.

Shortly after the commencement of deliberations, the jury submitted a note asking the court: "Does extreme indifference to human life mean that a person engages in an act/omission knowing that it could result in the loss of human life? Can you provide more guidance on this point?" The court told the jury that "the answer to your question is yes" and then reread all of the pertinent portions of its original charge[6] on reckless assault in the first degree.

---

[5] The defendant also claims that the court improperly refused to instruct the jury on assault in the third degree under General Statutes § 53a-61 (a) (2) as a lesser offense included within assault in the second degree under General Statutes § 53a-60 (a) (3). Because the defendant was not charged with assault in the second degree, his claim fails. See *State* v. *Whistnant*, 179 Conn. 576, 427 A.2d 414 (1980).

[6] The court instructed the jury on reckless assault in the first degree under General Statutes § 53a-59 (a) (3) as follows: "Under the second count, the defendant is charged with the crime of assault in the first degree in violation of another section of our Penal Code.

"Under this section of our Penal Code, a person is guilty of assault in the first degree when, under circumstances evincing an extreme indifference

The jury submitted another note asking: "Does there need to be an element of awareness of the probability

to human life, he recklessly engages in conduct which creates a risk of death to another person and thereby causes serious physical injury to another person.

"In order to prove the defendant guilty under the second count, the state must prove beyond a reasonable doubt that the defendant, one, recklessly engaged in conduct creating a risk of death to [W] and, two, the defendant recklessly engaged in such conduct under circumstances which evinced an extreme indifference to human life on the part of the defendant and, three, the defendant thereby caused serious physical injury to [W].

"Under this second count, intent is not an element; rather, the state must prove beyond a reasonable doubt that the defendant acted recklessly and [that] his reckless conduct created a risk of death to a person.

"A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such a nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

"The standard of conduct of a reasonable person in the same situation as the defendant is the doing of something that a reasonably prudent person would do under the circumstances, or, omitting to do what a reasonably prudent person would omit doing under the circumstances.

"A gross deviation is a great or substantial deviation, not just a slight or moderate deviation. There must be a great or substantial difference between, on the one hand, the defendant's conduct in disregarding a substantial and unjustifiable risk, and, on the other hand, what a reasonable person would have done under the circumstances. Whether a risk is substantial and unjustifiable is a question of fact for you to determine under all of the circumstances.

"Under the second count, the state must prove beyond a reasonable doubt that the defendant acted recklessly under such circumstances which evinced an extreme indifference to human life on the part of the defendant. This means that the state must prove beyond a reasonable doubt that the defendant engaged in that reckless conduct under such circumstances which demonstrate that the defendant did not care whatever about the life of [W]. It is a question of fact for you to decide whether or not such circumstances existed at the time of the alleged incident.

"Also, under this second count, the state has the burden to prove beyond a reasonable doubt that the defendant thereby caused serious physical injury to [W]. You will recall and apply my instructions regarding serious physical injury.

"Bearing in mind the instructions I have given to you regarding recklessly, serious physical injury and the crime of assault in the first degree as charged under the second count, under the second count the state has the burden to prove beyond a reasonable doubt, one, the defendant recklessly engaged in conduct creating a risk of death to [W] and, two, the defendant engaged in such reckless conduct under circumstances which evinced an extreme

or potentiality of the result/an extremely bad result to find extreme indifference for human life?" The court again read all of its original instruction on reckless assault in the first degree and its first supplemental instruction covering the same material. Shortly thereafter, the jury submitted another note asking: "Can we have a copy of the language you just read?" A copy of the instruction was given to the jury.

The defendant does not claim that any specific language in the court's instructions was incorrect or that the court omitted any crucial language from those instructions. The defendant contends that the court should not have read to the jurors the definition of recklessness generally when they asked for a clearer definition of the instruction regarding circumstances evincing extreme indifference to human life because it was unresponsive to the jury's question and misled the jury.

We begin by setting forth the applicable standard of review. "The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [it] might find to be established . . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party . . . . In this inquiry we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Martinez*, 95 Conn. App. 162, 188, 896 A.2d 109, cert. denied, 279 Conn. 902, 902 A.2d 1224 (2006).

indifference to human life on the part of the defendant and, three, the defendant thereby caused serious physical injury to [W]."

In the court's original instruction, which the court repeated in response to the jury's inquiry, the court correctly stated that "the state must prove beyond a reasonable doubt that the defendant engaged in that reckless conduct under such circumstances which demonstrate that the defendant *did not care whatever about the life of [W]*." (Emphasis added.) The court's explanation of the meaning of the statutory elements of § 53a-59 (a) (3), including recklessness as a predicate to its reiteration of the meaning of extreme indifference, was not inappropriate or misleading.

## III

The defendant finally claims that the court improperly admitted two photographs of W's injuries because their prejudicial effect outweighed their probative value. We disagree.

"Potentially inflammatory photographs may be admitted into evidence if the court, in its discretion, determines that the probative value of the photographs outweighs any potential prejudice. . . . [E]ven photographs depicting gruesome scenes that may prejudice the jury are admissible, so long as, in the court's discretion, they are more probative than prejudicial." (Citation omitted; internal quotation marks omitted.) *State* v. *Howard*, 88 Conn. App. 404, 427–28, 870 A.2d 8, cert. denied, 275 Conn. 917, 883 A.2d 1250 (2005). "Since the trial court exercises its broad discretion in such circumstances, its determination will not be disturbed on appeal unless a clear abuse of that discretion is shown." (Internal quotation marks omitted.) Id., 427.

The defendant challenges the admission of two photographs depicting W's injuries and the progress of his treatment. The court admitted the two photographs in order "to assist the [treating physician] in indicating to the jury the treatment that was required for these injuries and which may bear on the issue of serious physical

injury . . . ." Because there were only two photographs and they were used for the purpose of proving an essential element of an offense with which the defendant was charged, the probative value of the photographs outweighed their prejudicial effect. Accordingly, the court's decision to admit the challenged photographs into evidence was not an abuse of its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.