STATE OF CONNECTICUT *v.* MICHAEL D. JONES
(SC 18143)

Rogers, C. J., and Palmer, Vertefeuille, Zarella and Schaller, Js.

Argued September 4—officially released December 23, 2008

*Kent Drager*, senior assistant public defender, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom were *John A. Connelly*, state's attorney, and, on the brief, *John Davenport*, senior assistant state's attorney, for the appellee (state).

ZARELLA, J. The defendant, Michael D. Jones, appeals from the judgment of conviction, rendered after a jury trial, of one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (3)[1] (first degree reckless assault) for throwing an unopened forty ounce beer bottle at the victim and causing him serious physical injury. The defendant claims that reversal is required because the trial court improperly (1) permitted the jury to consider the charge of first degree reckless assault under count two of the information after it had found him not guilty of the lesser included offense of assault in the third degree in violation of General Statutes § 53a-61 (a) (3)[2] (third degree negligent assault) under count one of the information, (2) failed to instruct the jury on assault in the third degree in violation of § 53a-61 (a) (2)[3] (third degree reckless assault) as a lesser included offense of first degree reckless assault under count two of the information, (3) failed to instruct the jury on assault in the second degree in violation of General Statutes § 53a-60 (a) (1)[4] (second degree intentional assault without a dangerous instrument)[5]

---

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

[2] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when . . . (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon."

[3] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when . . . (2) he recklessly causes serious physical injury to another person . . . ."

[4] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person . . . ."

[5] The phrase "without a dangerous instrument," as used throughout this opinion, refers to the absence of an element requiring proof that the injury was caused with a dangerous instrument.

and assault in the third degree in violation of § 53a-61 (a) (1)[6] (third degree intentional assault) as lesser included offenses of assault in the first degree in violation of § 53a-59 (a) (1)[7] (first degree intentional assault with a dangerous instrument) under count one of the information, and (4) instructed the jury on self-defense. The defendant also claims that the evidence was insufficient to prove that he recklessly engaged in conduct creating a risk of death, that he acted under circumstances evincing an extreme indifference to human life and that he used more force than necessary to defend himself against his alleged attackers. We reverse in part the judgment of the trial court.

The following facts are relevant to our resolution of this appeal. On the evening of September 27, 2003, the victim, Jeffrey Cotto (Jeffrey) went with his brother, Edwin Cotto (Edwin), and Edwin's girlfriend, Amarilis Rivera (Amarilis), to Rivera-Hughes Park in Waterbury to play basketball. After Jeffrey and Edwin finished playing, they started walking up the street with Amarilis toward a Home Depot store. On their way, they passed the defendant and three other men. The defendant appeared to have been drinking and was holding an unopened forty ounce beer bottle in his hand. The defendant and Edwin exchanged provocative words, followed by blows, with the defendant pushing Edwin in the face and Edwin punching the defendant with his fist. Edwin then ran off toward the Home Depot store. When a man who was sitting nearby got up and blocked

---

[6] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

[7] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

Edwin's path, Edwin "kneed him" and knocked him down in order to get away. The defendant briefly chased Edwin but ultimately turned back and started running toward Jeffrey and Amarilis with the bottle still in his hand.

At about the same time, Jeffrey started running in the direction of the defendant and the Home Depot store to flee from the defendant's companions, who had been threatening him. When the defendant and Jeffrey, who were quickly approaching each other from opposite directions, were approximately three feet apart, the defendant threw the unopened bottle at Jeffrey, hitting him in the head.[8] Jeffrey attempted to escape from the defendant but fell to the ground. According to Amarilis, the defendant resumed hitting Jeffrey after he fell down, but Jeffrey neither confirmed nor denied this allegation, testifying only that the bottle had shattered upon impact, the beer had spilled onto his clothes, his head was bleeding and he had difficulty getting up because he felt dizzy.

After the defendant departed, Amarilis helped Jeffrey to his feet, and they continued walking toward the Home Depot store. A short time later, they stopped to rest at a nearby church, where they eventually were found by Edwin and a Home Depot employee. The employee called the police and an ambulance, which took Jeffrey to a hospital. Although the hospital treated and released Jeffrey that night, he was taken to another hospital the following day after Edwin discovered him lying naked and sweaty on his bedroom floor. A computed tomography (CT) scan revealed a blood clot in the right frontal lobe of Jeffrey's brain.[9] Following brain

[8] Amarilis testified, however, that the defendant had "smashed" the bottle over Jeffrey's head because the defendant was angry that Edwin had eluded him.

[9] A major contributing factor to the intracranial bleeding was that Jeffrey suffered from a blood clotting disorder, or type of hemophilia, that made him more susceptible to bleeding than persons who do not have the condition.

surgery to remove the clot, Jeffrey remained in the hospital for approximately one month. Although he recovered from the immediate trauma, he has suffered continuing problems with his memory as a result of the injury.

The defendant was arrested and charged in a two count information[10] with first degree intentional assault with a dangerous instrument in violation of § 53a-59 (a) (1) (count one)[11] and first degree reckless assault (count two).[12] The defendant pleaded not guilty and elected to be tried by a jury.

At trial, the defendant testified that he had thrown the bottle at Jeffrey in self-defense after Edwin punched him and he saw Jeffrey coming toward him. He specifically testified that the altercation began when Edwin deliberately bumped into him as he was walking out of the park. According to the defendant, angry words were exchanged, and Edwin made racial slurs and cursed at the defendant. The defendant started backing up, but Edwin and Jeffrey kept coming toward him. When one

---

[10] The original information, dated September 29, 2003, charged the defendant with one count of assault in the second degree in violation of § 53a-60 and one count of breach of the peace in the second degree in violation of General Statutes § 53a-181. On December 17, 2003, the state filed a substitute information charging the defendant with one count of assault in the first degree in violation of § 53a-59 (a) (1). On September 27, 2004, the state filed a second substitute information charging the defendant with one count of assault in the first degree in violation of § 53a-59 (a) (1) and one count of assault in the first degree in violation of § 53a-59 (a) (3).

[11] Count one of the information provides in relevant part: "[The defendant] did commit the crime of assault in the first degree in violation of . . . § 53a-59 (a) (1) in that . . . [the defendant], acting with the intent to cause serious physical injury to another person, namely Jeffrey Cotto . . . caused such injury to such person by means of a dangerous instrument, a beer bottle."

[12] Count two of the information provides in relevant part: "[The defendant] did commit the crime of assault in the first degree in violation of . . . § 53a-59 (a) (3) in that . . . [the defendant], acting under circumstances evincing an extreme indifference to human life . . . recklessly engaged in conduct which created a risk of death to another person and thereby caused serious physical injury to another person, namely Jeffrey Cotto."

of the defendant's companions called the defendant's name, he glanced away and, just as he turned his head back toward Edwin and Jeffrey, Edwin punched him in the face. The defendant then saw Jeffrey approaching and threw the bottle at him from about two feet away. The defendant testified that he did not know where the bottle hit Jeffrey because he was not paying attention. After he threw the bottle, the defendant started "tussling" with Edwin and one of Edwin's companions. When someone screamed, Edwin and the defendant broke apart, and Edwin started running with his companion toward the Home Depot store. The defendant chased them until he got to the Home Depot parking lot, where he turned around and started walking back. The defendant testified that the reason he had thrown the bottle was because he feared for his safety. Having already been attacked by Edwin, he was feeling dizzy and scared and believed that Jeffrey, who was approaching him, was about to hit him again.

During closing arguments, defense counsel contended that the case revolved around the issue of self-defense. Counsel asserted that the defendant had been trying to protect himself when he threw the bottle at Jeffrey because Edwin had just punched him and he had been trying to back away when Jeffrey started coming toward him. Defense counsel further asserted that, even under the state's version of events, it was Jeffrey who had been the aggressor because he had been running toward the defendant when the defendant threw the bottle.

The state argued that the defendant had not acted in self-defense because he was the one who had provoked the incident. Moreover, there was nothing to prevent the defendant from retreating. The state also argued that, under a theory of self-defense, the defendant was permitted under the law to use only the amount of force necessary to thwart the aggressor, and that the

defendant had used more force than necessary when he threw the bottle at Jeffrey from only two feet away. The state further disagreed with defense counsel's interpretation of testimony that Jeffrey was running toward the defendant when the incident occurred, suggesting that such testimony did not mean that Jeffrey was running "at" the defendant. The state instead posited that Jeffrey had been running in the defendant's direction because he was following his older brother Edwin, who had fled in the same direction toward the Home Depot store a short time earlier. The state also argued that, because the defendant was taller than Edwin or Jeffrey, the defendant's testimony that he was fearful of being attacked lacked credibility.

Both parties filed requests to charge on lesser included offenses. The state requested instructions on assault in the second degree with a dangerous instrument in violation of § 53a-60 (a) (2)[13] (second degree intentional assault with a dangerous instrument) under count one of the information and assault in the second degree in violation of § 53a-60 (a) (3)[14] (second degree reckless assault) under count two of the information. The defendant requested instructions on second degree intentional assault without a dangerous instrument, second degree intentional assault with a dangerous instrument, and third degree intentional assault under the first count of the information, and second degree reckless assault and third degree reckless assault under the second count of the information. Although the defendant's

---

[13] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ."

[14] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ."

request to charge on third degree assault under count two of the information cited § 53a-61 (a) (3), which requires a finding of criminal negligence and the use of a dangerous instrument, the language that the defendant actually used in his written request was identical to that used in subsection (a) (2) of the statute, which requires a finding of reckless conduct[15] and does not contain the element of a dangerous instrument.

When the court heard the parties prior to instructing the jury, the state remarked that, although it was not urging the court to give instructions on lesser included offenses, it was "appropriate" for the court to give such instructions and that it would not object if the court chose to give them. Thereafter, the court instructed the jury on first degree intentional assault with a dangerous instrument and first degree reckless assault, and the lesser included offenses of second degree intentional assault with a dangerous instrument under count one of the information and second degree reckless assault under count two of the information.

Following the instructions and outside the presence of the jury, defense counsel objected to the trial court's decision to give only one instruction on second degree intentional assault with a dangerous instrument under count one of the information, and not to give the defendant's other requested instruction on second degree intentional assault without a dangerous instrument

---

[15] The defendant's request to charge provided in relevant part: "Assault in the third degree . . . [§] 53a-61 (a) (3) states that a person is guilty of assault in the third degree when he recklessly causes serious physical injury to another person. The terms 'recklessly' and 'serious physical injury' are as I defined them earlier.

"(The evidence to which the above instruction applies concerns the facts in dispute between the elements of assault in the first or second degree, and assault in the third degree, the main factual difference being whether there were circumstances evincing an extreme indifference to human life and whether [the defendant's] conduct created a risk of death, and whether the beer bottle constituted a dangerous instrument) . . . ."

under that count. After hearing the parties' arguments, the trial court declined to give the additional instruction on second degree intentional assault without a dangerous instrument under count one.

The court also noted that, although it had not given the defendant's requested instruction on third degree reckless assault under count two of the information, it would give an instruction on third degree negligent assault as a lesser included offense when the jury reconvened. Defense counsel pointed out that the third degree assault instruction that the defendant had requested was predicated on the mental state of recklessness rather than criminal negligence. The court replied that there was no evidence to support a third degree reckless assault instruction because the evidence indicated that the victim's injury had been caused with a dangerous instrument, an element that was not included in the requested instruction. Defense counsel replied that the issue of a dangerous instrument had been raised under the first count of the information. The court nonetheless indicated that it did not intend to give an instruction on third degree reckless assault.

When the jury returned to the courtroom, the court reinstructed on the elements of first and second degree assault under both counts of the information in the same manner as it did before. It then stated that, if the jury reached third degree assault as a lesser included offense, it must find that the state had proven the elements of § 53a-61 (a) (3), including criminal negligence and physical injury to another person with a dangerous instrument. The court did not specify whether third degree negligent assault was a lesser included offense under count one or count two of the information but suggested that, in view of the fact that some of the jurors appeared to be confused, it would provide the jury with a flow chart to assist in their deliberations.

After the jury left the courtroom, defense counsel objected to the instruction on third degree negligent assault under count two of the information, noting that the charge that the court had given was not the charge on third degree reckless assault that the defendant had requested. Defense counsel acknowledged that the request to charge referred incorrectly to subsection (a) (3), the third degree negligent assault provision, instead of subsection (a) (2), the third degree reckless assault provision, and apologized for the error, explaining that it was a "misprint . . . ." He also reminded the court that the language that had been proposed in the request to charge was taken directly from § 53a-61 (a) (2),[16] which proscribes reckless conduct. The court, however, declined to reinstruct the jury on the disputed charge.

At the start of the deliberations, the jury sent a note to the court requesting "the formatted chart of the charges as discussed in court." The court provided it with a flow chart listing the charged offenses, the statutory citation associated with each offense and the possible verdicts that it could reach. The lesser included offense of third degree negligent assault was listed under both counts. A short time later, the jury sent another note to the court requesting "the written break-down of the differen[t] degrees of the lesser assault charges for count two and their short description." In response to the jury's request, the court provided it with a transcript of the relevant portions of the court's instructions on the lesser included offenses of assault in the second and third degree. The jury subsequently returned a verdict of not guilty on first, second and third degree assault under count one, and guilty on the

[16] Defense counsel stated: "Your Honor, the lesser of assault third that [had been] requested, although there is a misprint on the number, was not the [criminally] negligent one but the one that—this is on assault third, but he recklessly causes serious physical injury to another person. I did not request the criminal negligence one although there is a misprint on the number, [for] which I apologize, but I actually quoted the statute."

charge of first degree reckless assault under count two. It thus did not reach the lesser included offenses under the second count.

The defendant filed a motion for a judgment of acquittal on the ground that the evidence was insufficient to permit a finding of guilty beyond a reasonable doubt. He also filed a motion for a new trial, claiming, inter alia, that the court improperly had declined to give all of his requested instructions on the lesser included offenses, including the instructions on second degree intentional assault without a dangerous instrument under the first count of the information and third degree reckless assault under count two of the information. The trial court denied the motions. The court then rendered judgment in accordance with the jury verdict and sentenced the defendant to fourteen years imprisonment and four years of special parole. This appeal followed.[17]

I

We begin with the defendant's claim that he was improperly convicted of first degree reckless assault because the evidence was insufficient to prove the two aggravating elements, namely, that he engaged in conduct creating a risk of death to another person and that he did so under circumstances evincing an extreme indifference to human life. The defendant specifically claims that the evidence was insufficient to prove that he had engaged in conduct creating a risk of death because any risk of death he caused was not due to the fact that he threw the bottle at Jeffrey from a few feet away but to the fact that he threw the bottle at a person who suffers from hemophilia, a condition that may result in serious, life-threatening bleeding from

[17] The defendant appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

even minor injuries. Thus, because the defendant did not know Jeffrey at the time of the incident and was unaware that he was a hemophiliac, the evidence was insufficient to prove that the defendant was consciously aware of and disregarded the fact that throwing a bottle at Jeffrey from a few feet away would create a risk of death. The defendant also claims that the evidence was insufficient to prove that he acted under circumstances evincing an extreme indifference to human life because "extreme indifference" refers to a mental state associated with a heightened degree of recklessness that results in a highly probable risk of death. Accordingly, throwing the bottle at Jeffrey without knowledge that Jeffrey was a hemophiliac, a major contributing factor to the severity of his injury, was insufficient to prove the existence of circumstances evincing an extreme indifference to human life.

The state responds that the evidence was sufficient to support the jury's verdict. The state cites testimony that the defendant was angry because he was unable to catch Edwin and that, when he encountered Jeffrey on his way back to the park, he intentionally struck Jeffrey with the unopened bottle and continued to hit him after Jeffrey fell down, thus causing him serious injury and creating a risk of death. We agree with the state.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Na'im B.*, 288 Conn. 290, 295–96, 952 A.2d 755 (2008). "[I]n viewing evidence which could yield contrary infer-

ences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Morgan*, 274 Conn. 790, 801, 877 A.2d 739 (2005).

General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

In *State* v. *McMahon*, 257 Conn. 544, 778 A.2d 847 (2001), cert. denied, 534 U.S. 1130, 122 S. Ct. 1069, 151 L. Ed. 2d 972 (2002), we discussed the phrase " 'extreme indifference to human life' " in the context of manslaughter in the first degree[18] and observed that the Penal Code does not define the phrase. Id., 553. We are guided, however, by General Statutes § 1-1 (a), which provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." Accordingly, "the meaning of 'extreme indifference to human life' . . . can be achieved by reference to any dictionary and to judicial opinions addressing violations of [the manslaughter statute]." *State* v. *McMahon*, supra, 553.

---

[18] See General Statutes § 53a-55 (a) ("[a] person is guilty of manslaughter in the first degree when . . . [3] under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person").

Webster's Third New International Dictionary defines "indifference" as "the quality or state of being indifferent . . . ." "Indifferent" is defined as that which is "looked upon as not mattering one way or another . . . ." Webster's Third New International Dictionary. The legislature also has provided guidance as to the level of "indifference" it intended in first degree reckless assault by modifying the level of indifference with the adjective "extreme." General Statutes § 53a-59 (a) (3). "Extreme is defined as 'existing in the highest or greatest possible degree,' and is synonymous with 'excessive.' " *State* v. *McMahon,* supra, 257 Conn. 554, quoting Webster's Third New International Dictionary.

With respect to the terms "recklessly" and "creates a risk of death to another person" in the first degree reckless assault provision, General Statutes § 53a-3 (13) provides in relevant part: "A person acts 'recklessly' with respect to a result . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur . . . . The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . ." "Recklessness involves a subjective realization of that risk and a conscious decision to ignore it. . . . It does not involve intentional conduct because one who acts recklessly does not have a conscious objective to cause a particular result. . . . Because it is difficult to prove this through direct evidence, the state of mind amounting to recklessness may be inferred from conduct." (Citations omitted; internal quotation marks omitted.) *State* v. *Jupin,* 26 Conn. App. 331, 340, 602 A.2d 12, cert. denied, 221 Conn. 914, 603 A.2d 404 (1992).

The Appellate Court has upheld convictions of first degree reckless assault under § 53a-59 (a) (3) for immersing a child in scalding hot bathwater; *State* v. *Pearson,* 97 Conn. App. 414, 421–22, 904 A.2d 1259, cert.

denied, 280 Conn. 934, 909 A.2d 963 (2006); repeatedly striking the victim on the head and body with a bat or stick; *State* v. *Holmes*, 90 Conn. App. 544, 548, 877 A.2d 826, cert. denied, 275 Conn. 927, 883 A.2d 1250 (2005); violently shaking a baby; *State* v. *Santiago*, 74 Conn. App. 736, 742, 813 A.2d 1068 (2003); beating the victim unconscious; *State* v. *Rumore*, 28 Conn. App. 402, 413–14, 613 A.2d 1328, cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992); and slapping the victim on the face a single time, causing a subdural hematoma. *State* v. *Jupin*, supra, 26 Conn. App. 341.

In the present case, considering the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have found the defendant guilty of first degree reckless assault under § 53a-59 (a) (3). If the jury had believed Amarilis' testimony, it could have found that the defendant had been drinking and was angry after exchanging blows with Edwin and failing to catch up with him when he ran away. It also could have found that the defendant, upon running back to the park, took his frustrations out on Jeffrey by viciously smashing him over the head with the unopened forty ounce beer bottle, which shattered upon impact, and by continuing to hit Jeffrey after he fell down. The fact that Jeffrey was a hemophiliac is irrelevant. The jury must find only that the defendant's conduct created a substantial "*risk*" of death, which the jury in the present case reasonably could have found in light of the foregoing testimony. We therefore reject the defendant's evidentiary sufficiency claim.

II

We next consider the defendant's claim that the trial court improperly failed to instruct the jury on the lesser included offense of third degree reckless assault under count two of the information. The defendant claims that he made a proper request to charge, that third

degree reckless assault is a lesser included offense of first degree reckless assault and that the evidence distinguishing first and third degree reckless assault was in sufficient dispute that the jurors could have found him not guilty of the greater offense and guilty of the lesser.

The state does not contest that third degree reckless assault is a lesser included offense of first degree reckless assault or that the evidence was in sufficient dispute to support the requested instruction. The state argues instead that the defendant did not clearly and properly request the instruction because he erroneously cited subsection (a) (3) of § 53a-61, which sets forth the crime of third degree negligent assault, rather than subsection (a) (2), in his written request to charge on third degree assault under count two. The state also argues that defense counsel failed to object properly to the court's instructions when they were given and, therefore, that the trial court was unaware that the defendant was objecting to its failure to instruct on third degree reckless assault. We agree with the defendant.

The defendant's claim of instructional error with regard to the lesser included offense of third degree reckless assault requires us, on appeal, "to review the facts in the light most favorable to the defendant." *State* v. *Tomlin*, 266 Conn. 608, 611, 835 A.2d 12 (2003). "Whether one offense is a lesser included offense of another presents a question of law. . . . Accordingly, our review is de novo." (Citation omitted.) Id., 615–16.

The applicable legal principles are well established. "A defendant is entitled to an instruction on a lesser offense if . . . the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first commit-

ted the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant [not guilty] of the greater offense but guilty of the lesser." *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980). Because the defendant's claim implicates all four prongs of *Whistnant*, we address each prong in turn.

Under the first prong of *Whistnant*, a defendant is not entitled to an instruction on a lesser included offense unless it is requested. Id. In the present case, the parties disagree as to whether the defendant made such a request, with the defendant claiming that he did and the state contending otherwise. We agree with the defendant that he properly requested the instruction.

"It is well settled that . . . [a] proposed instruction on a lesser included offense constitutes an appropriate instruction for purposes of the first prong of *Whistnant* if it complies with Practice Book [§ 42-18].[19] . . . We previously have held, in the context of a written request to charge on a lesser included offense, [that the] requirement of [§ 42-18] is met only if the proposed request contains such a complete statement of the essential facts as would have justified the court in charging in the form requested." (Internal quotation marks omitted.) *State* v. *Tomlin*, supra, 266 Conn. 629–30.

We conclude that the defendant complied with Practice Book § 42-18. The defendant first asked for the

_____

[19] Practice Book § 42-18 provides in relevant part: "(a) When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the evidence to which the proposition would apply. . . . If the request is granted, the judicial authority shall apply the proposition of law to the facts of the case. . . ."

instruction in his written request to charge. Although he misidentified the statute by number when he indicated that he was seeking an instruction under § 53a-61 (a) (3), which requires a finding of criminal negligence and the use of a dangerous instrument, the actual language he suggested was identical to the language used in § 53a-61 (a) (2), which requires a finding of reckless conduct.[20] See footnotes 3 and 15 of this opinion.

Moreover, when the trial court failed to instruct the jury as the defendant had requested, defense counsel objected two different times, thus effectively preserving the issue for appellate review even if his written request to charge was ambiguous. Counsel first objected after the trial court completed its initial instructions to the jury, which did not include an instruction on third degree assault under either count. At that time, defense counsel clearly stated that he was seeking a third degree assault instruction involving reckless conduct rather than criminal negligence. The court indicated its unequivocal understanding of the defendant's request when it replied that it did not wish to give the instruction on third degree reckless assault because it lacked the element of a dangerous instrument, unlike the instruction on third degree negligent assault. After the trial court reinstructed the jury and added the instruction on third degree negligent assault, counsel again objected to the court's omission of the instruction on third degree reckless assault, but the court declined to reinstruct. The defendant raised the issue one last time in his motion for a new trial, which the trial court denied.

---

[20] The state's contention that the defendant also asked in his written request for a third degree assault instruction under § 53a-61 (a) as a lesser included offense under the second count of the information is incorrect. The instruction to which the state refers related to the *first* count of the information, in which the defendant requested an instruction under § 53a-61 (a) (1), a fact reflected in the language proposed by the defendant for the third degree assault instruction under count one.

Accordingly, we conclude that the first prong of *Whist-nant* is satisfied.

Under the second prong of *Whistnant*, a defendant is entitled to the requested instruction if it was "not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser [offense] . . . ." *State* v. *Whistnant*, supra, 179 Conn. 588. The defendant claims that the trial court should have instructed the jury on third degree reckless assault under count two because it is a lesser included offense of first degree reckless assault. We agree.

This court has elaborated on the second prong of *Whistnant* as follows: "[T]he relationship between the offenses is determined not by a comparison of statutory elements in the abstract . . . but by reference to the pleadings in the case. The key ordinarily is whether the allegations in the pleading charging the higher offense . . . include all of the elements of the lesser offense." (Internal quotation marks omitted.) *State* v. *Tomlin*, supra, 266 Conn. 618. "[T]he term 'offense,' as it is used in *Whistnant*, refers to each distinct method, which may be comprised of different elements, by which a crime may be completed." Id., 624.

Applying these principles, we conclude that *Whist-nant*'s second prong also is satisfied. The substitute information alleged in count two that the defendant "did commit the crime of assault in the first degree in violation of . . . § 53a-59 (a) (3) in that . . . acting under circumstances evincing an extreme indifference to human life he recklessly engaged in conduct which created a risk of death to another person and thereby caused serious physical injury to another person, namely Jeffrey Cotto." The only elements that distinguish first degree reckless assault under count two, as alleged in the information, and third degree reckless

assault, as set forth in § 53a-61 (a) (2), is that the former requires proof that the defendant acted under circumstances evincing an extreme indifference to human life and that his conduct created a risk of death to another person. The remaining elements of reckless conduct and causing serious physical injury to another person are the same in both statutes. Accordingly, the allegations of first degree reckless assault contained in count two of the information include all of the elements of third degree reckless assault.

The defendant claims, with respect to the third and fourth prongs of *Whistnant,* that the evidence distinguishing third degree reckless assault from first degree reckless assault was sufficiently in dispute that the jurors could have found him not guilty of the greater offense and guilty of the lesser offense. As we explained in part I of this opinion, the defendant specifically claims, in contrast to the state, that the evidence was insufficient to prove that he recklessly engaged in conduct creating a risk of death or that he acted under circumstances evincing an extreme indifference to human life. The jury, therefore, could have found him not guilty of first degree reckless assault and guilty of the lesser charge of third degree reckless assault. We agree with the defendant that there is evidence on which the jury could have found him not guilty of the greater offense and guilty of the lesser offense and that this evidence was in sufficient dispute to satisfy the last two prongs of *Whistnant.*

This court has stated that, "[d]espite being conceptually distinct parts of the *Whistnant* formulation, the third and fourth prongs are subject to the same evidentiary analysis . . . [and, therefore, can be analyzed] simultaneously. The third prong of *Whistnant* requires that there [be] some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense

. . . . The fourth prong requires that the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant [not guilty] of the greater offense but guilty of the lesser. . . .

"In *State* v. *Rasmussen*, [225 Conn. 55, 65–73, 621 A.2d 728 (1993)], we . . . reviewed the standard of evidence required to satisfy the [third and fourth prongs] of the *Whistnant* test. We . . . held that there must be sufficient evidence, introduced by either the state or the defendant, or by a combination of their proofs, to justify a finding of guilt of the lesser offense. . . . Although [we] expressly [reject] the proposition that a defendant is entitled to instructions on lesser included offenses based on merely theoretical or possible scenarios . . . we . . . consider the evidence available at trial in the light most favorable to the defendant's request. . . . [T]he jury's role as fact-finder is so central to our jurisprudence that, in close cases, the trial court should generally opt in favor of giving an instruction on a lesser included offense, if it is requested. . . . Otherwise the defendant would lose the right to have the jury pass upon every factual issue fairly presented by the evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Tomlin*, supra, 266 Conn. 631–32.

The state does not, and cannot, contest the defendant's claim on the basis of the third and fourth prongs of *Whistnant* because it specifically requested an instruction on second degree reckless assault, which also contains the element of recklessness but does not contain the elements of creating a risk of death to another person and acting under circumstances evincing an

extreme indifference to human life.[21] The state thus appears to agree that the jury could have found the defendant guilty of reckless conduct without finding him guilty of creating a risk of death or acting under circumstances evincing an extreme indifference to human life and that these elements were in sufficient dispute to justify an instruction on a lesser included offense. Indeed, the state remarked to the trial court that instructions on lesser included offenses that did not include the foregoing elements were "appropriate . . . ." The state also failed to object when the court gave the instruction on third degree negligent assault, which requires an even less culpable state of mind than recklessness.[22]

We nonetheless conduct an independent analysis to ensure that the third and fourth prongs of *Whistnant* have been satisfied. With respect to the third prong, we must examine whether there is any possibility that the evidence introduced at trial would justify a conviction of the lesser included offense. In other words, we must ascertain whether the jury could have determined that the defendant recklessly caused serious injury to Jeffrey without creating a risk of death under circumstances evincing an extreme indifference to human life, the two elements of first degree reckless assault that are not elements of third degree reckless assault. With respect to the fourth prong, we must determine whether the evidence that would have supported a conviction on the lesser included offense was disputed by the parties.

---

[21] The only difference between §§ 53a-60 (a) (3) and 53a-61 (a) (2) is the element of using a deadly weapon or dangerous instrument. For purposes of the present *Whistnant* analysis, however, the significance of the state's willingness to propose the second degree reckless assault instruction is that, in doing so, it effectively conceded that the defendant could be found guilty of reckless conduct, albeit by different means, without the more serious elements of first degree reckless assault.

[22] We also note that, during oral argument, the state conceded that its principal argument as to this claim was that the defendant had not properly requested the charge.

In the present case, there is no question that the issue of whether the defendant acted in self-defense was vigorously disputed by the parties in their closing arguments. If the jurors had believed the defendant's theory of self-defense, however, they could have determined that, although the defendant recklessly threw a beer bottle at Jeffrey from close range, thus causing him serious physical injury within the meaning of the third degree reckless assault provision, the state could not prove "circumstances evincing an extreme indifference to human life" under the first degree reckless assault provision because Edwin had instigated the altercation, Jeffrey had approached the defendant aggressively as the defendant was backing away to avoid further contact, the defendant's actions were an instinctive response to his split-second conclusion that Jeffrey was about to attack him and he reacted so quickly to the perceived threat that he did not even know where the bottle hit Jeffrey.[23] Viewing the evidence in the light most favorable to the defendant, we conclude that the third and fourth prongs of *Whistnant* are satisfied and that the trial court improperly failed to give the defendant's requested instruction on third degree reckless assault as a lesser included offense of first degree reckless assault.

The state claims that, even if the trial court improperly declined to instruct the jury on third degree reckless assault, reversal is not required because the error was harmless beyond a reasonable doubt. The state contends that the trial court's charge on third degree negligent assault involved a less culpable state of mind than third degree reckless assault and, therefore, that

[23] Even if the defendant's actions had created a risk of death, the inability of the jury to find that the defendant had acted under circumstances evincing an extreme indifference to human life for the reason that he had been defending himself would have prevented it from finding him guilty of first degree reckless assault.

the instruction on third degree negligent assault bene-fited the defendant. The state also argues that the jury charge did not affect the defendant's ability to present a defense and that the evidence adduced at trial sup-ported the jury's finding that the defendant was guilty of first degree reckless assault. We disagree.

In *Tomlin*, we stated that, "inherent in a trial court's decision to charge on lesser included offenses is a find-ing that the defendant's state of mind may fall within one of many requisite mental states. Therefore, the trial court's charge on lesser included offenses, which occurs prior to the jury's deliberations, merely informs the consciousness of the jurors that the defendant's particular state of mind at the time he committed the crime may fall within one of many requisite mental states and that each requisite mental state serves as an element for a distinct crime." *State* v. *Tomlin*, supra, 266 Conn. 639.

We further stated, however, that "the failure of a court to inform the jury of these subtle distinctions could result in very serious harm to defendants because the jury supposedly would deliberate under the false impression that the defendant's state of mind reason-ably does not fall within the ambit of the elements of distinct crimes.

"Moreover, we explicitly have stated that when the four prongs of *Whistnant* are satisfied, a defendant is '*entitled*' to a charge on a lesser included offense. . . . It would be a hollow entitlement, indeed, if, every time a defendant were convicted of a greater offense in a case in which the jury had not been given an instruction on a lesser included offense to which the defendant was entitled, we declared such error harmless without reviewing the facts and circumstances of the particular case. We conclude, therefore, that the mere fact that a defendant is convicted of the greater offense does not

compel the conclusion that any failure to instruct the jury on a lesser included offense is harmless error." (Citation omitted; emphasis in original.) Id., 639–40.

In *Tomlin*, the trial court instructed the jury on murder and two lesser included offenses that differed only with respect to the state of mind element, and the jury found the defendant in that case guilty of the offense requiring the least culpable state of mind and carrying the potential for the least punishment. Id., 640. We nonetheless concluded that the evidence regarding the defendant's state of mind was sufficiently in dispute on two other lesser included offenses, on which the defendant had sought but had not obtained instructions, that the trial court's failure to instruct on those offenses had resulted in harmful error. Id.

We similarly conclude that the trial court in the present case improperly declined to charge the jury on third degree reckless assault under count two of the information. Although the court instructed the jury on third degree negligent assault, the jury had found the defendant not guilty on that charge as a lesser included offense under count one,[24] thus leaving it with no ability to find the defendant guilty of assault in the third degree

[24] Although the trial court instructed the jury to consider the first degree assault charges under counts one and two of the information before it considered the lesser included offenses in order of degree, the jurors apparently followed the flow chart that the court gave them during their deliberations, which listed the offenses in a column, starting with the charge of first degree assault with a dangerous instrument under the first count of the information, followed by the two lesser included offenses under that count, the charge of first degree reckless assault under the second count of the information and the two lesser included offenses under that count. The jurors therefore decided the two lesser included offenses under the first count before they considered the charge of first degree reckless assault under the second count, which effectively eliminated the possibility of a conviction on the charge of third degree negligent assault under the second count because the jurors already had found the defendant not guilty on the same charge under the first count.

under count two. Moreover, even if the jury had not already decided whether the defendant was guilty of third degree negligent assault under count one, third degree negligent assault would not have been a proper lesser included offense of first degree reckless assault in this case because third degree negligent assault requires the use of a dangerous instrument. See General Statutes § 53a-61 (a) (3). Accordingly, it was possible for the jury to find that the defendant committed first degree reckless assault without finding that the defendant committed third degree negligent assault. The trial court's charge on second degree reckless assault, which also contains the element of a dangerous instrument, likewise was improper because, in view of the charges as described in the substitute information, the jury could have found the defendant guilty of first degree reckless assault, as it did in this case, without proof that a dangerous instrument had been used in the commission of the crime. Indeed, the state acknowledges in its brief to this court that the instructions that the trial court gave on second and third degree assault under count two were incorrect because they included the element of a dangerous instrument. The lack of proper instructions on lesser included offenses under count two was especially damaging in view of the jurors' apparent interest in examining the lesser charges, as evidenced by their note to the court requesting a written breakdown and short description of those offenses. Thus, the trial court, in declining to instruct on third degree reckless assault, did not present the jurors with an accurate description of the offenses of which the defendant could have been found guilty and deprived them of the opportunity to find the defendant guilty of the lesser included offense of third degree reckless assault under count two. We therefore conclude that the error was harmful.

The judgment is reversed with respect to count two and the case is remanded for a new trial on that count; the judgment is affirmed in all other respects.[25]

In this opinion the other justices concurred.

---

[25] We do not reach the defendant's claim that the trial court improperly permitted the jury to consider the charge of first degree reckless assault on which he was convicted under count two after it found him not guilty of third degree negligent assault under count one of the information because we reverse the defendant's conviction on count two. Accordingly, even if there was a legal inconsistency between the two verdicts, a question that we do not decide, it no longer exists.

We also need not reach the defendant's "contingent" claim that the trial court improperly failed to instruct the jury on second degree intentional assault without a dangerous instrument and third degree intentional assault as lesser included offenses of first degree intentional assault with a dangerous instrument under count one of the information. In light of our reversal of the defendant's conviction on the second count, his argument that his conviction under count two, which did not require proof of the element of a dangerous instrument, demonstrates that the trial court also should have charged the jury on second degree intentional assault without a dangerous instrument and third degree intentional assault under count one no longer is valid. Similarly, we do not reach the defendant's claim that the trial court improperly instructed the jury on self-defense under count two because it is unlikely to arise at the defendant's retrial.